**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 1 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

        Petitioner - Appellee,

v.

ANJEL TORREZ-ORTEGA,

        Defendant - Appellant.

No. 97-8094

---

UNITED STATES OF AMERICA,

        Petitioner - Appellee,

v.

LEONARD LEE URAM,

        Defendant - Appellant.

No. 97-8095

---

UNITED STATES OF AMERICA,

        Petitioner - Appellee,

v.

ANTHONY M. FLORES, also known
as Joseph Hernandez, also known as
Christino, also known as Bellota,

        Defendant - Appellant.

No. 97-8096

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 96-CR-102)**

Michael H. Reese, Wiederspahn, Liepas & Reese P.C., Cheyenne, Wyoming, for Defendant - Appellant Torrez-Ortega.

Donald E. Miller, Graves, Miller & Kingston, P.C., Cheyenne, Wyoming, for Defendant - Appellant Uram.

Ronald G. Pretty, Cheyenne, Wyoming, for Defendant - Appellant Flores.

David A. Kubichek, Assistant U.S. Attorney (David D. Freudenthal, U.S. Attorney and Patrick J. Crank, Assistant U.S. Attorney with him on the briefs), Casper, Wyoming, for Plaintiff - Appellee.

Before **EBEL** , **HENRY** and **LUCERO** , Circuit Judges.

**LUCERO** , Circuit Judge.

This direct appeal of appellants' convictions for conspiracy to violate federal drug laws presents several issues, one of which is precedential in this circuit. We must decide whether a witness who asserts an illegitimate claim of privilege, and essentially refuses to answer questions at trial, is available and subject to cross-examination within the meaning of the Confrontation Clause and Rule 801(d)(1) of the Federal Rules of Evidence. Such a witness, we conclude, is

not sufficiently available for cross-examination to satisfy the requirements of the Confrontation Clause and Rule 801(d)(1).

## I

Appellants Anthony Flores, Anjel Torrez-Ortega, and Leonard Lee Uram were tried and convicted of conspiracy to possess with intent to distribute and distribution of cocaine and marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The government claims that Armondo Valdez-Arieta ("Valdez") was also a part of the conspiracy whose members, from 1994 until their arrest in August 1996, obtained drugs from Mexico, Arizona, and New Mexico for resale in Wyoming. Valdez testified before a grand jury about the drug distribution scheme. At trial, however, in spite of a grant of immunity, he asserted an invalid Fifth Amendment privilege claim and refused to testify.

At the government's request, the judge declared Valdez a hostile witness, and ruled his grand jury testimony admissible as a prior inconsistent statement under Fed. R. Evid. 801(d)(1)(A). The prosecutor, ostensibly examining Valdez, would read excerpts from the grand jury testimony and ask Valdez if he had made the statements attributed to him. Valdez would then refuse to answer, asserting a claim against self-incrimination. This pattern continued until large segments of Valdez's grand jury testimony had been read into evidence. With a few minor

exceptions, Valdez refused to answer questions posed by the defense on cross-examination.

## II

Appellants contend that admission of Valdez's grand jury testimony is improper under Fed. R. Evid. 801(d)(1) [1] and the Confrontation Clause of the Sixth Amendment to the Constitution, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. We review a trial court's evidentiary decisions for abuse of discretion. See United States v. Knox, 124 F.3d 1360, 1363 (10th Cir. 1997). However, we subject to de novo review a trial court's legal conclusions about the Federal Rules of Evidence and the Confrontation Clause. See Reeder v. American Economy Ins. Co., 88 F.3d 892, 894 (10th Cir. 1996); Matthews v. Price, 83 F.3d 328, 332 (10th Cir. 1996).

Rule 801(d)(1)(A) provides that a "statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding." Fed. R. Evid. 801(d)(1)(A). In addition,

---

[1]Technically, a hearsay statement that cannot be admitted as "not hearsay" under Fed. R. Evid. 801(d) is rendered inadmissible by Fed. R. Evid. 802 unless it falls under one of the hearsay exceptions. See United States v. Owens, 484 U.S. 554, 557 n.1 (1988).

"the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to . . . cross-examination." California v. Green, 399 U.S. 149, 158 (1970). Admission of Valdez's grand jury testimony therefore violates the Confrontation Clause and is improper under Rule 801(d)(1)(A) because Valdez was not subject to cross-examination. [2] Finding that Valdez was not subject to cross-examination, we need not reach appellants' contention that his illegal assertions of privilege are not inconsistent with his grand jury testimony for purposes of Rule 801(d)(1)(A).

"Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions." United States v. Owens, 484 U.S. 554, 561 (1988). However, "limitations on the scope of examination by the trial court or assertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination within the intent of the Rule no longer exists." Id. at 562 (emphasis added). Here,

---

[2]Although the "hearsay rules and the Confrontation Clause are generally designed to protect similar values," they do not completely "overlap." Green, 399 U.S. at 155. Thus, a statement properly admitted under a hearsay exception may yet violate confrontation rights. See id. at 155-56 (citing Barber v. Page, 390 U.S. 719 (1968)). Similarly, a violation of the hearsay rules may not necessarily impinge on confrontation values. See id. at 156. Hence, in many instances separate analyses of Confrontation Clause and hearsay issues may be necessary for a disposition of the case at hand. Given the facts this case presents, such an approach here would be unnecessarily redundant. We have therefore opted to collapse treatment of the hearsay issue into the confrontation Clause analysis.

Valdez took the stand and the oath, but he assuredly did not respond willingly to questions—precisely because of his obstinate and repeated assertion of the privilege against self-incrimination.

The government counters that when a sworn witness has been "immunized" his assertions of privilege are invalid, and he is thereby "made legally available for both direct and cross-examination." No. 97-8096, Appellee's Br. at 26-27. We disagree. Settled Supreme Court authority instructs that the validity of a witness's assertion of privilege does not determine whether such witness is subject to cross-examination. See Douglas v. Alabama, 380 U.S. 415, 420 (1965). In Douglas, the prosecution placed on the stand a witness who refused to answer any questions concerning the alleged crime on the basis of a claim of privilege rejected by the trial court. "Under the guise" of refreshing the witness's recollection, the prosecution read in the presence of the jury an extrajudicial confession allegedly made by the witness. Id. at 416. When the prosecution periodically paused to ask the witness whether he made the statements in question, every such inquiry was met by the reassertion of the invalidly-claimed privilege. See id. at 416-417. Valdez's grand jury testimony found its way to the jury in precisely the same manner. Douglas concludes that given the witness's assertion of privilege and refusal to testify, "petitioner's inability to cross-examine . . . as to the alleged confession plainly denied him the right of cross-

examination secured by the Confrontation Clause." Id. at 419; see also United States v. Murphy, 696 F.2d 282, 286 (4th Cir. 1982) (witness "refused to testify at all, thus rendering Rule 801(d)(1) inapplicable"). We see no reason for a different result in this case.

Valdez could hardly have been less forthcoming on the stand. He refused to acknowledge that the grand jury testimony read by the prosecution was his, see 11 R. at 41-42, and he made clear to both sides that he would invoke his privilege against self-incrimination and persist in refusing to answer all questions, see id. at 18, 104. The only answers that the government cites as departing from this pattern are too elliptical and confusing to demonstrate that the defendants were ever presented with an opportunity for effective cross-examination. More significantly, Valdez's limited responses were elicited well after he had established that he would not answer questions on the stand. See United States v. Fiore, 443 F.2d 112, 115 (2d Cir. 1971) (witness "was not subject to cross-examination by the defendant . . . because he had made it evident that he would refuse to give testimony of any sort"); see also United States v. Garner, 574 F.2d 1141, 1146 (4th Cir. 1978) (declining to hold that cross-examination was "adequate to meet the requirements of the Confrontation Clause" when witness stated that his grand jury testimony implicating defendants in a drug trafficking scheme was inaccurate, and disclaimed knowledge of the subject matter of that

testimony).  Owens, we believe, indicates that assertions of privilege can undermine the values protected by the Confrontation Clause and Rule 801(d)(1)(A) to such an extent as to necessitate an in camera determination of whether or not a witness will refuse to testify and submit to cross-examination.  If that determination is left until after the potentially offending and prejudicial out-of-court statements have been placed before the jury and imputed by the prosecutor to the witness, the constitutional damage will have been done, as happened in this case.

The government reads  Owens very differently.  Under its interpretation, Owens adopts the position taken by Justice Harlan in his concurring opinion in Green.  The government characterizes that position as follows: once the prosecution swears a witness who is legally—although not "practically"—available for cross-examination, the Confrontation Clause is satisfied.  Even assuming this is a fair characterization of Justice Harlan's views, it is not a position endorsed by  Owens.

Although the Court in  Owens "agree[d] with . . . Justice Harlan," it did so solely for the proposition that the out-of-court testimony of a witness claiming memory loss can be admitted without violating the Confrontation Clause.  See Owens, 484 U.S. at 558-59 (quoting  Kennedy v. Stincer, 482 U.S. 730, 739 (1987)).  In fact, since  Owens, the Supreme Court has made it clear that Justice

Harlan's position on the Confrontation Clause was, and remains, a decidedly minority view. "Such a narrow reading of the Confrontation Clause which would virtually eliminate its role in restricting the admission of hearsay testimony, is foreclosed by our prior cases [and] the position . . . advanced by the [government] has been previously considered by this Court and gained the support of only a single Justice [Harlan]." White v. Illinois, 502 U.S. 346, 352-53 & n.5 (1992).

As a consequence, we are unconvinced by the government's attempt to link by analogy cases in which a witness professes loss of memory—real or otherwise—and cases in which a witness simply refuses to testify on the basis of an assertion of privilege. Owens clearly indicates that a witness's assertions of privilege may prevent viable cross-examination. See Owens, 484 U.S. 561-62. "But that effect is not produced by the witness' assertion of memory loss—which . . . is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement." Id. at 562. [3] The

---

[3]In fact, Owens is more limited still in that it deals only with a real loss of memory about the basis for an identification statement under Rule 801(d)(1)(C). Owens, 484 U.S. at 564. We have since extended the reasoning of Owens to false claims of memory loss about prior inconsistent statements under Rule 801(d)(1)(A). See United States v. Knox, 124 F.3d at 1360, 1364 (10th Cir. 1997).

Owens bolsters its conclusion that the legitimately forgetful witness is subject to cross-examination for purposes of Rule 801(d)(1)(C) by contrasting that evidentiary provision with the definition of "unavailability as a witness" in Rule 804(a). The advisory committee note for Rule 804(a)(3), which defines a witness

(continued...)

contrast to a case such as this is stark. See Douglas, 380 U.S. at 419 (holding that witness's illegal claim of privilege and refusal to testify "create[s] a situation in which the jury might improperly infer both that the statement [attributed to the witness] had been made and that it was true").

## III

The government attacks this conclusion on policy grounds, arguing that it will embolden defendants into coercing or procuring witnesses' invalid claims of privilege. We are unpersuaded for three reasons.

First, when a defendant wrongfully procures such behavior of a witness, she waives her rights to confrontation.[4] See Fed. R. Evid. 804(b)(6). Second, the witness who refuses to testify despite a grant of immunity is generally more susceptible to prosecution for contempt than the witness who claims memory loss.[5] That such prosecution may be costly or time-consuming cannot justify the

_____

[3](...continued)
testifying to a loss of memory as unavailable, states that 804(a)(3) "clearly contemplates his production and subjection to cross-examination." In contrast, the advisory committee note for Rule 804(a)(2), which defines as unavailable a witness who "persists in refusing to testify . . . despite an order of the court to do so," makes no such statement.

[4]No allegation is made in this case that defendants have waived their rights of confrontation by wrongfully procuring Valdez's silence at trial. See Douglas v. Alabama, 380 U.S. 415, 420 (1965).

[5]When a witness asserts a loss of memory, he shifts to the government the burden of proving the falsity of his claim "by demonstrating that [he] in fact did
(continued...)

- 10 -

denial of fundamental constitutional rights.  Third, if the witness's prior statement has the necessary indicia of reliability,      see Ohio v. Roberts  , 448 U.S. 56, 66 (1980), [6] it properly may be admitted as an exception to hearsay, principally under Fed. R. Evid. 807.    Compare  United States v. Earles   , 113 F.3d 796, 800-02 (8th Cir. 1997) (admitting grand jury testimony with guarantees of trustworthiness sufficient to satisfy both the Confrontation Clause and Rule 804(b)(5), now Rule 807),  and United States v. McHan   , 101 F.3d 1027, 1036-38 (4th Cir. 1996) (same),  with  United States v. Gomez-Lemos   , 939 F.2d 326, 331-32 (6th Cir. 1991) (reversing district court's admission under Fed. R. Evid. 804(b)(5) of grand jury testimony as lacking indicia of reliability sufficient to satisfy Confrontation Clause),  and United States v. Lang   , 904 F.2d 618, 622-25 (11th Cir. 1990) (same). See generally   3 Stephen A. Salzburg et al.,     Federal Rules of Evidence Manual 1957-60 (7th ed. 1998) (collecting cases).

---

[5](...continued) remember the events in question."     Matter of Battaglia   , 653 F.2d 419, 422-24 (9th Cir. 1981) (remanding because the district court erred in placing the initial burden of proof on witness).  This is not always an easy burden to carry.      See Matter of Kitchen , 706 F.2d 1266, 1275-76 (2d Cir. 1983) (reversing because government failed to meet its burden of proof).  The government has a less onerous burden of proof when it prosecutes a witness for refusing to testify despite a grant of immunity because in such a case the falsity of the asserted privilege is self-evident.

[6]The government here concedes that Valdez's grand jury testimony does not pass muster under   Roberts .

The in camera hearing we conclude is required to determine, for purposes of Rule 801(d)(1)(A), whether or not a witness will refuse to testify and submit to cross-examination can also serve—when necessary—to determine admissibility under the reliability requirements of Roberts and the hearsay exceptions of the Federal Rules of Evidence. In fact, whenever a court holding such a hearing finds a witness is not subject to cross-examination, her prior grand jury testimony will become hearsay and consequently admissible consonant with the Confrontation Clause only when —at a minimum—the court predetermines that it bears adequate indicia of reliability. See Roberts , 448 U.S. at 66. If such grand jury testimony does not fall within a firmly rooted hearsay exception, its admission can never pass constitutional muster unless supported by "a showing of particularized guarantees of trustworthiness." Id. To admit prior incriminating statements without either the protection of cross-examination or the indicia of reliability required by Roberts violates the fundamental principles of the Confrontation Clause.

**IV**

Because admission of Valdez's grand jury testimony violated the Confrontation Clause, we must reverse unless we are "able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California , 386 U.S. 18, 24 (1967). If we conclude that the error was harmless, reversal is not required.

The operative question is not whether we are convinced of defendants' guilt, but "whether there is a reasonable probability that the evidence complained of might have contributed to the conviction." Id. at 23. To make this determination we consider

> the importance of the witness's testimony in the prosecution case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

United States v. Begay, 937 F.2d 515, 524 (10th Cir. 1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)). The government bears the burden of proving the error was not prejudicial. See United States v. Olano, 507 U.S. 725, 734 (1993).

## A

With respect to Uram, admission of Valdez's grand jury testimony is harmless. As the government argues, this evidence has little bearing on its case against Uram; it neither refers to Uram nor directly links him to the alleged conspiracy. It is thus of little relevance whether Valdez's testimony was cumulative, corroborated, or contradicted by other evidence. Furthermore, Uram's inability to cross-examine Valdez did not "shut off a line of vital defense evidence" to him. Begay, 937 F.2d at 524-25. Consequently, we are persuaded beyond a reasonable doubt that the remaining evidence in the case convinced the

jury to find Uram guilty.  The violation of Uram's rights to confrontation is therefore harmless under Chapman .

**B**

Although the government makes no assertion that erroneous admission of Valdez's grand jury testimony is harmless as to Flores and Torrez-Ortega, "we may exercise our discretion to initiate harmless error review in an appropriate case." United States v. Langston , 970 F.2d 692, 704 n.9 (10th Cir. 1992) (citing United States v. Giovannetti , 928 F.2d 225, 227 (7th Cir. 1991)).

Giovannetti considers whether, and when, the government may waive harmless error arguments.  The Seventh Circuit concludes that the "mandatory language" of Fed. R. Crim. P. 52(a)—"error . . . which does not affect substantial rights shall be disregarded"—does not make the rule's provisions nonwaivable. See Giovannetti , 928 F.2d at 226.  "Specific rules of conduct or procedure are promulgated against a background of understandings concerning the procedure for invoking the benefits of rules, or for waiving those benefits."      Id.  But waiver need not bind an appellate court.  Construing harmless error rules in accordance with the imperatives of Fed. R. Crim. P. 2, namely "simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay," Giovannetti concludes the reviewing court has

> discretion to overlook a failure to argue harmlessness, and in
> deciding whether to exercise that discretion the controlling

considerations are the length and complexity of the record, whether the harmlessness of the error or errors found is certain or debatable, and whether a reversal will result in protracted, costly, and ultimately futile proceedings in the district court.

Giovannetti, 928 F.2d at 227; see also United States v. Pryce, 938 F.2d 1343, 1348 (D.C. Cir. 1991) (Williams, J.) ("[A] court should normally conduct the harmless error inquiry on its own initiative only when the relevant portions of the record are reasonably short and straightforward. Moreover where a court does conduct the inquiry on its own, it should err on the side of the criminal defendant."). Langston affirms our discretion to review for harmless error absent argument "in an appropriate case." 970 F.2d at 704 n.9. We now conclude that the factors enumerated in Giovannetti are relevant to a decision whether to exercise such discretion. [7]

Under that standard, we are doubtful that this is an appropriate case for the exercise of that discretion. The record is extensive and complex: twenty-five volumes cover a two-week, multi-defendant trial. The harmlessness of the constitutional error is at best debatable. The government's concession that

---

[7]We do not decide whether the Giovannetti factors are exhaustive. Other courts have described "alternative" considerations. See, e.g., United States v. Rose, 104 F.3d 1408, 1415 (1st Cir. 1997) (holding that relevant factors include "whether the arguments that the government does make provide assistance to the court on the harmlessness issue"). While we recognize that such factors may indeed be relevant, it is not clear that they are alternatives to—rather than subsets of—those listed in Giovannetti. For purposes of this case, we need not and therefore do not resolve this issue.

Valdez's testimony fails the Roberts indicia of reliability test must be coupled with its statement that "[t]here can be no doubt that the Valdez grand jury testimony was important to the prosecution's case against Christino [Flores] and Lencho [Torrez-Ortega]." No. 97-8095, Appellee's Br. at 34. Our independent review of the full record does not readily persuade us that the error is harmless beyond a reasonable doubt under Van Arsdall . See 475 U.S. at 684. Valdez's grand jury testimony directly and significantly implicates Flores and Torrez-Ortega, and appears to be the principal corroboration for the prosecution's main witness, Deborah Neary, the reliability of whose testimony was not beyond doubt. On this record, and in the complete absence of guidance from the government, we are unable to find such certainty of harmlessness beyond a reasonable doubt as to justify our discretionary initiation of full-scale harmless error review. See Langston , 970 F.2d at 704 n.9.

## V

Appellants contend that admission of Valdez's grand jury testimony violates their rights to a fair trial in two additional respects: first, that the government's calling Valdez to the stand in the knowledge that he would refuse to testify constitutes prosecutorial misconduct; and second, that the government failed to disclose evidence pertaining to Valdez's truthfulness in violation of Brady v. Maryland, 373 U.S. 83 (1963). We review both claims de novo. See

United States v. Ivy, 83 F.3d 1266, 1288 (10th Cir. 1996) (prosecutorial misconduct); United States v. DeLuna, 10 F.3d 1529, 1534 (10th Cir. 1993) (Brady).

Prosecutorial misconduct may arise when the government calls witnesses in a "conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege." United States v. Namet, 373 U.S. 179, 186 (1963) (characterizing United States v. Mahoney, 262 F.2d 535, 537 (2d Cir. 1959)); see also United States v. Coppola, 479 F.2d 1153, 1160 (10th Cir. 1973) ("Namet . . . condemns the conscious effort to derive evidentiary value from unfavorable inferences arising from the claiming of the privilege."). We are unpersuaded, however, that the prosecution consciously made such an attempt in this case.

A "prosecutor need not accept at face value every asserted claim of privilege , no matter how frivolous." Namet , 373 U.S. at 188. There is no evidence before us that the government knew in advance of trial that Valdez definitely would not testify. Furthermore, there is no suggestion that the government believed that Valdez could properly invoke his privilege against self-incrimination. Where "the prosecution could have reasonably assumed that the possibility of being cited for contempt by the Court would force [the witness] to testify," there is no misconduct in the decision to call that witness. United States

v. Harper , 579 F.2d 1235, 1240 (10th Cir. 1978).

Misconduct may yet arise if the prosecution continues to question a witness once her consistent refusal (legitimate or otherwise) to testify has become apparent.   Coppola , 479 F.2d at 1160.  But such a finding depends on the government's "seeking to get evidentiary value from the questions and the claims of privilege."   Id.   Here, by contrast, the government did not seek to obtain evidentiary value directly from Valdez's silence, but indirectly as a means of rendering his prior testimony admissible under Rule 801(d)(1)(A).  As demonstrated by the district court's careful treatment of the matter, the prosecution undoubtedly had a colorable—albeit ultimately invalid—argument for admission of Valdez's grand jury testimony as prior inconsistent statements.  That is sufficient to defeat this suggestion of improper prosecutorial purpose. Compare  Namet , 373 U.S. at 188,   with  Coppola , 479 F.2d at 1160.

The defendants' Brady claims rest on the contention that a prosecutor believed Valdez had lied in his grand jury testimony and in a proffer he made to secure a "Safety Valve" sentence pursuant to U.S.S.G. § 5C1.1.  However, even if the record could be read to suggest such a subjective suspicion, the government's disclosure obligations under Brady would not extend to a merely subjective assessment by a prosecutor of a witness's veracity.  See United States v. Thomas,

987 F.2d 1298, 1300 (7th Cir. 1993).  Consequently, a <u>Brady</u> violation did not occur.

**VI**

Finally, we find no error in the district court's denial of Flores's speedy trial claims.[8]  The Speedy Trial Act requires that a criminal defendant be tried within seventy days after his indictment or initial appearance, whichever is the later.  <u>See</u> 18 U.S.C. § 3161(C)(1).  The Act also provides that delays occasioned by the filing of pretrial motions are excluded from the 70-day calculation.  <u>See</u> 18 U.S.C. §3161(h)(1)(F); <u>see also</u> <u>Henderson v. United States</u>, 476 U.S. 321, 330 (1986) ("Congress intended to . . . exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not the delay in holding that hearing is 'reasonably necessary.'").  We review de novo a district court's ultimate legal conclusions involving allegations of speedy trial violations; its subsidiary factual findings we review for clear error.  <u>See</u> <u>United States v. Saltzman</u>, 984 F.2d 1087, 1092 (10th Cir.1993).

Here, the 70-day period began to run on September 20, 1996, when the government filed the indictment.  On October 22, 1996, the first pretrial motions were filed, and they were still pending when the trial began on April 27, 1997.

---

[8] Flores raises several other claims of evidentiary and sentencing error that we do not address because we cannot say they are likely to recur.

Thus, the 70-day period provided by the Act did not elapse before commencement of trial.  Flores's speedy trial claim fails.

## VII

Uram's conviction is **AFFIRMED**; the convictions of Flores and Torrez-Ortega are **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.