TACHA, Circuit Judge,
dissenting.
I respectfully dissent. While I agree with the majority that the district court improperly admitted the telephone record summaries, I am convinced that we should apply a harmless error analysis. The majority correctly notes that we may initiate harmless error review sua sponte, despite the government’s failure to raise this argument. Even in complicated drug cases like this one, it is incumbent upon us to scrutinize the record to determine whether harmless error analysis is appropriate. In my mind, this is an appropriate case for harmless error review because the record contains overwhelming evidence that the defendant, Rolando Samaniego, actively participated in a marijuana importation and distribution conspiracy over a period of years from 1994 to early 1997.
An erroneous evidentiary ruling is considered harmless unless it affects a substantial right of a party. See United States v. Charley, 176 F.3d 1265, 1282 (10th Cir.1999) (citing Fed.R.Evid. 103(a)). An error affecting a substantial right must have had a “substantial influence on the outcome or ... leave[ ] one in grave doubt as to whether it had such effect.” Id. (internal quotation marks and citation omitted).
The government charged Samaniego with one count of conspiracy in violation of 21 U.S.C. § 846, thirteen counts of traveling or using a facility in interstate commerce to facilitate an unlawful activity, 18 U.S.C. § 1952(a)(3), and seventeen counts of possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1). The majority focuses on the thirty specific counts, asserting that the telephone records are potentially essential evidence for proving these offenses. However, the government presented at least seven witnesses who had direct and sustained contact with defendant in his capacity as a leader in the drug conspiracy. Maria Valle testified how Samaniego used her house in Oklahoma City to store and distribute thousands of pounds of marijuana brought up from Mexico in 1994. Gerardo Gutierrez-Moreno explained how Samaniego solicited him to drive drug shipments from near El Paso, Texas, to Oklahoma City and how he delivered those shipments to Samaniego in Oklahoma City. James Lee Pleskac, Pete Ford, and Gerald Chillas admitted to driving shipments from Texas to Oklahoma City as a part of the operation, and Ples-kac and Ford testified that Samaniego was a part of the conspiracy. Jeff Mosby was hired by defendant to help transport marijuana, and he personally witnessed defendant weighing, sorting, and distributing hundreds of pounds of marijuana. The defendant also used Mosby’s house to store his drug shipments in 1995, after Maria Valle’s house was no longer available. Matthew Fernandez testified about buying marijuana from defendant from 1994 to 1996. Finally, Drug Enforcement Administration (“DEA”) Special Agent Timothy Jones testified that in September of 1994, he brought a shipment to defendant in Oklahoma City while serving in an undercover capacity.
Almost all of these witnesses put Rolando Samaniego at the center of a drug conspiracy that brought tons of marijuana from Mexico to Texas and then to Oklahoma City. Many of them corroborated each other’s testimony in important ways. For example, several of them brought shipments to Samaniego at Maria Valle’s house. This direct witness testimony provided extremely strong proof of defendant’s criminal activity. The conspiracy charge, at the very least, has overwhelming support in the record. “To obtain a conviction for conspiracy the government must show [1] that two or more persons agreed to violate the law, [2] that the *1227 Defendant knew at least the essential objectives of the conspiracy, ... [3] that the Defendant knowingly and voluntarily became a part of it, and [4] that the alleged coconspirators were interdependent.” United States v. Ivy, 83 F.3d 1266, 1285 (10th Cir.1996) (internal quotation marks and citations omitted). The government more than met this burden with only the above-mentioned testimony. In light of this evidence, the admission of the disputed telephone record summaries could not have had a substantial influence on the outcome of the case with respect to the conspiracy charge and several of the individual charges. Cf. United States v. Wilson, 134 F.3d 855, 867 (7th Cir.) (exercising discretion and finding harmless error in drug conspiracy conviction where government presented overwhelming evidence against defendant at trial), cert. denied, - U.S. -, 119 S.Ct. 216, 142 L.Ed.2d 178 (1998); Lufkins v. Leapley, 965 F.2d 1477, 1482 (8th Cir.1992) (exercising discretion and finding harmless error where record in procedurally complicated case consisted only of the trial transcript, which included a confession and corroborating evidence).
Additionally, I am compelled to comment on the factors discussed by the majority in determining whether to apply a harmless error analysis. As the majority points out, this Circuit recently cited with approval United States v. Giovannetti, 928 F.2d 225, 227 (7th Cir.1991), in which the Seventh Circuit enunciated three factors to guide a court in determining whether to conduct a harmless error analysis when the government waives the issue. See United States v. Torrez-Ortega, 184 F.3d 1128, 1135-37 (10th Cir.1999). Those factors are the length and complexity of the record, the certainty of the harmlessness, and the cost and futility of proceedings in the event of a reversal. I agree with the majority that the third Giovannetti factor does not assist in the analysis of whether to exercise our discretion. See Majority Op. at n. 2; I further doubt the utility of the'first factor. I am especially concerned that a court facing a large record might-rely heavily or exclusively on the first factor in refusing to exercise discretion to apply harmless error. In my judgment, an appellate court cannot be excused from its duty to study a record, even in exercising the broadest scope of its discretionary review, just because a record is lengthy and/or complicated. The scope of a record does not excuse the appellate court from reviewing it and attempting to determine whether harmless error analysis is appropriate. Indeed, I fail to see how we could ever make a rational judgment on the second factor — whether the harmlessness of the error is certain or debatable — without scrutinizing for ourselves the full record, regardless of its length or complexity.[4] The complexity of a record should not by itself play a part in our analysis. Rather, a complex record might be a factor that impacts our certainty of the harmlessness of the error.
Thus, I look only to the second factor— whether the harmlessness of the error is certain or debatable. This, it seems to me, is the crux of harmless error review and the touchstone for our analysis. If harmlessness is debatable, it is hard to conclude that the error is harmless or, in this context, that the court should exercise its discretionary prerogative to undertake a formal harinless error review. If, however, on the record before the court, the harmlessness is certain, the appellate court should be much more willing to exercise its discretion and engage in a thorough harmless error analysis.
*1228 When the government fails to argue harmless error on appeal, I hold the firm view that our appellate review responsibility requires us to carefully examine the record before us and decide whether to exercise our discretion to employ harmless error review based not on the scope of the record, but on the level of our certainty that the error was harmless. Based on my review of this record, I am sufficiently certain that the error in admitting the telephone summaries was harmless with respect to at least some of the convictions that I would exercise our discretion to conduct a harmless error analysis. I therefore respectfully dissent.

. The court in Torrez-Ortega demonstrates this point. The court first notes the extensive nature of the record and then explains that the harmlessness of admitting testimony in violation of the Confrontation Clause was “at best debateable.” Torrez-Ortega, 184 F.3d at 1136-37. It then concluded, "Our independent review of the full record does not readily persuade us that the error is harmless....” Id. (emphasis added). Thus, the court had to review the entire record, even though it was large and complex, in order to determine whether to invoke its discretion to apply harmless error review.