FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 6, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER LEE MARTINEZ,

    Defendant - Appellant.

No. 18-8007

_____

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 2:17-CR-00213-NDF-1)**
_____

Neil D. Van Dalsem, Office of the Federal Public Defender, Muskogee, Oklahoma, for Defendant-Appellant.

Timothy J. Forwood, Assistant United States Attorney (Mark A. Klaassen, United States Attorney, District of Wyoming, with him on the brief), Cheyenne, Wyoming, for Plaintiff-Appellee.
_____

Before **HARTZ**, **MATHESON**, and **EID**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

A jury in the United States District Court for the District of Wyoming convicted

Defendant Christopher Lee Martinez on one count of attempting to entice a minor to

engage in illegal sexual activity. *See* 18 U.S.C. § 2422(b). On appeal Defendant argues

that the district court (1) should have authorized funds for a forensic psychologist, (2) improperly excluded evidence of his history of mental illness, and (3) should have allowed him to present evidence of his character for truthfulness. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     BACKGROUND

### A.     Defendant's Arrest

On July 22, 2017, Special Agent Brent Metcalfe of the Wyoming Division of Criminal Investigation (DCI) posted a personal advertisement on the "Casual Encounters" section listed on the Craigslist website at that time. The purpose of the posting was to ferret out those who used the Internet to arrange sexual encounters with minors. Metcalfe chose the date because of the expected influx of tourists for Cheyenne Frontier Days. The advertisement was entitled "Fresh CFD Taboo" and read: "In town with my dau. She is very eager. She wants to experience what Cheyenne has to offer. Who wants to have some 'fresh fun.'" R., Vol. 3 at 247–49. Metcalfe explained that he used the terms *fresh* and *eager* to communicate to the reader that the subject of the advertisement was young and sexually inexperienced.

Defendant, 27 years old at the time, was one of the first to respond, sending a message shortly before 4:00 p.m. The email messages were relayed by Craigslist between the correspondents. Metcalfe posed as the father, telling Defendant that he hoped to "find a guy for my daughter, but she's younger." *Id.* at 256. When Defendant asked how old the girl was, Metcalfe answered that she was 12. Defendant said: "Okay. When you thinking? I'll think about it. You ain't a cop or law enforcement?" *Id.* at 257.

2

Metcalfe assured him that he was not a cop and the conversation continued. It centered on whether Defendant wanted to have sexual relations with the daughter. Defendant asked Metcalfe what sexual acts he could engage in with the girl, whether he could take her virginity, and whether Metcalfe had condoms. Defendant repeatedly sought assurances that Metcalfe was not a "cop," explaining that he was nervous because the police had "popped a lot of people" during Frontier Days the previous year. *Id.* at 287.

With Defendant's interest established, Metcalfe requested that they move their conversation to "Kik," an instant-messaging application that better allowed investigators to obtain Defendant's identity. Defendant agreed. After he asked Metcalfe to send him a picture of the daughter, the two agreed to exchange pictures. Metcalfe sent Defendant a picture of part of the chest of a life-like mannequin. Defendant asked for another picture of the child's full body with no face. Metcalfe refused to send additional pictures but agreed that Defendant could come to his motel to take his daughter's "V card" (referring to her virginity). *Id.* at 302. Defendant eventually asked to message with the daughter directly, and Metcalfe assumed the girl's identity. Defendant asked if she wanted to "lose [her] V card?" When Metcalfe asked what that meant, Defendant said "Virginity." *Id.* at 310. After exchanging about 100 messages over almost five hours, Defendant agreed to meet at a motel and said that he would bring a condom.

At 8:48 p.m., Defendant arrived at the motel parking lot and messaged Metcalfe, asking him to come out. Metcalfe and several other officers exited their vehicles and arrested Defendant in his truck. He was in possession of a phone and a condom. Forensic analysis confirmed that the phone was the one used to communicate with

3

Metcalfe on the Kik application. When interviewed by officers at the scene, Defendant admitted to sending the messages but stated that he was getting ready to call the police before he was arrested. When asked why he had a condom, he said something like, "You have to be real." *Id.* at 321.

### B. Pretrial Motions

Defense counsel filed a pretrial motion under 18 U.S.C. § 3006A requesting a forensic psychologist at the government's expense. The motion stated the charge against Defendant, the trial date, the cost of a forensic evaluation and polygraph by Dr. Charles W. Dennison CP, Defendant's minimal employment history, and his lack of funds to pay Dr. Dennison. Other than stating that Defendant was on Social Security disability with a mental-health diagnosis, the motion said nothing regarding his mental health and the need for an evaluation except as follows:

> Defendant was diagnosed with bipolar disorder, attention deficit disorder (ADD), schizophrenia and depression when he was 18 years old. The diagnosis was at Peak Wellness, Cheyenne, Wyoming. Defendant has a Mental Health history of attempted suicide at 18 years of age, hallucinations with the last occurrence taking place about 4-5 years ago. Defendant was prescribed Trazadone, Invega, Amitriptyline, Abilify and Fluoxetine. He is currently off medication.
>
> . . .
>
> Due to the nature of the charges in this matter, a forensic evaluation is necessary.

R., Vol. 1 at 29. The district court denied the motion, saying:

> Defendant failed to provide the Court with information regarding the necessity for a forensic evaluation by Dr. Dennison at Government expense. The Court routinely grants forensic evaluations in cases involving receipt of child porn, for purposes of sentencing mitigation. However, this

4

case involves attempted enticement of a minor. . . . Given the mandatory minimum sentence in this case, it is not clear the purpose of a forensic evaluation. Defendant has failed to provide the Court with any explanation of the necessity for an evaluation, either for trial or sentencing purposes. IT IS ORDERED that Defendant's Motion for Forensic Psychologist at Government Expense is DENIED *at this time* based on the Court's finding that Defendant has not established the necessity for this evaluation.

R., Vol. 2 at 12 (italics added). Defense counsel did not renew the motion or later provide further justification for a forensic psychologist.

The government then filed a motion in limine to prevent Defendant from presenting evidence of his character for truthfulness and honesty and to exclude any evidence of his mental illness. On the first issue, it argued that because the charged offense of enticement of a minor is not a crimen falsi (that is, an offense in which a lie by the defendant is one of the elements of the crime), testimony regarding Defendant's character for truthfulness was not relevant. Accordingly, it requested that Defendant's use of character evidence be limited to evidence that he is law abiding. The court agreed that Defendant had not shown a basis for offering evidence of his character for truthfulness, but said that it would later rule on specific issues related to character evidence that might arise during trial.

On the second issue, the government contended that absent an insanity defense, evidence of Defendant's mental defects or lack of volitional control was not an allowable defense. Although the government acknowledged that evidence of mental health could be admitted to negate specific intent, it pointed out that Defendant bore the burden of showing that the proffered evidence was being offered for that purpose. This issue was addressed at the final pretrial conference, where the court gave defense counsel the

5

opportunity to explain the purpose of introducing evidence of Defendant's mental health.

Defense counsel stated:

> So my plan was to introduce a very limited number of medical records that I've provided to the Government, and they basically just state that Mr. Martinez was diagnosed with bipolar, I think back in 2010; that he was prescribed medication. He's also got ADD, I believe. And the *only* purpose of those records is because I would have him testify and his family testify that he has these mental issues and that his mental state of mind is important because one of the elements in this case is that he obviously knowingly had to complete this act, and that goes to that element of whether or not he knowingly completed this act.
>
> And the medical records themselves are really just to – there to corroborate what he would testify to about his own character and state of mind.

R., Vol. 3 at 34 (emphasis added). Defense counsel acknowledged that Defendant "did not plead guilty by reason of mental illness" but argued that the jury should decide "whether or not [his mental illness] affected his decision to do the things he did or not." *Id.* at 35. And responding to the arguments by the government, he said:

> We're offering it to show his potential state of mind in general and who he is. And this is a person – and like I said, I don't know how you can – the Court or any court could preclude an individual from getting on the stand and testifying that, "Yes, I'm – you know, this is my background. I have these issues that I've dealt with. I was on medication, but I wasn't taking the medication at the time," and to describe his general makeup, I suppose.

*Id.* at 38.

The court granted the motion in limine. It expressed concern that the proffered mental-illness testimony would "create[] the potential for confusion by the jury and seek[ ] to suggest a justification as opposed to a defense to any of the elements that the Government is required to prove by proof beyond a reasonable doubt." *Id.* at 39. It noted that this court had held "that psychological and psychiatric evidence that negates the

6

essential element of specific intent can be admissible" but that the admission of such evidence required clear demonstration of "how such evidence would negate intent rather than merely present a dangerously confusing theory of defense more akin to justification and excuse." R., Vol. 1 at 72 (internal quotation marks omitted). The court concluded that without an expert or current medical records, Defendant lacked mental-health evidence showing "some cognitive defect precluding him from forming the specific intent for the charged offense" and thus the proffered evidence was irrelevant. *Id.* at 73.

### C.    Trial

The prosecution called only three witnesses at trial: Special Agent Robert Leazenby of the Wyoming DCI testified in general about the conduct of child-exploitation investigations; Agent Metcalfe testified about his communications with Defendant; and Mark Timmons of the Wyoming DCI testified about his search of Defendant's car after the arrest.

Before calling any witnesses, Defendant renewed his request to be permitted to offer mental-health evidence. He pointed to testimony by Agent Leazenby that investigators like to talk to arrestees in such cases to determine their states of mind. The prosecutor pointed out, however, that the state of mind Leazenby was referring to was whether or not the arrestee wanted to have sex with the child. When the court asked defense counsel how the mental-health evidence would relate to the instruction on the *knowingly* element of the offense, counsel responded that he wanted to put on the evidence simply as background evidence:

7

> But that's who he is and that's kind of his general makeup, just as if a person was employed and is – you know, as an officer and they've been doing that for ten years. Well, in the last ten years he's been doing really nothing. Why has he been doing nothing? Because he's on [Social Security benefits], and the jury is going to know why he's on [Social Security benefits]. Well, that's why.

R., Vol. 3 at 377. The court was not persuaded. It held that while information concerning Defendant's background may be relevant for sentencing purposes, it was not relevant at the trial.

Defendant's evidence consisted of (1) his own testimony, explaining that he was not engaged in criminal activity but, rather, was attempting to identify someone engaged in child exploitation, whom he would report to law-enforcement authorities, and (2) six witnesses who testified to his character as a law-abiding citizen.

Defendant also unsuccessfully attempted to put on evidence of his character for truthfulness, which he claimed had been attacked during his cross-examination by the prosecution. He argued that such evidence would assist the jury in determining whether to believe his statement that he did not intend to engage in sex with a minor. The court rejected the argument, reaffirming its earlier ruling that such evidence was not relevant because the charged offense did not include an element that concerned truthfulness. It further observed that because the bulk of the evidence in the case involved contradictory statements made by Defendant before and after his arrest, testimony regarding his character for truthfulness would not be probative in helping the jury decide which if any of his statements to believe.

## II.     DISCUSSION

### A.     Denial of Motion to Hire Forensic Psychologist

The Criminal Justice Act (CJA) permits a court to authorize funding for an expert

witness at the government's expense:

> Counsel for a person who is financially unable to obtain investigative,
> expert, or other services necessary for adequate representation may request
> them in an ex parte application.  Upon finding, after appropriate inquiry in
> an ex parte proceeding, that the services are necessary and that the person is
> financially unable to obtain them, the court . . . shall authorize counsel to
> obtain the services.

18 U.S.C. § 3006A(e)(1).  The defendant bears the burden of persuasion.  *See United*

*States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986).  The necessity of services must

be established with specificity.  In the present context, "[g]eneral allegations supporting a

request for court appointment of a psychiatric expert, without substantive supporting

facts, and undeveloped assertions that psychiatric assistance would be beneficial to the

defendant will not suffice to require the appointment of a psychiatrist to aid in the

preparation of a criminal defense." *Liles v. Saffle*, 945 F.2d 333, 336 (10th Cir. 1991).

We review the denial of a CJA funding request for an abuse of discretion.  *See United*

*States v. Solon*, 596 F.3d 1206, 1210 (10th. Cir. 2010).

On appeal Defendant argues that psychiatric testimony could have supported his

defense that he was merely trying to catch sexual predators, not trying to be one himself.

He states:

> [Defendant's] case provides a classic example of how psychological
> evidence can be relevant in evaluating a defendant's specific intent.

[Defendant] was charged with an attempt crime, a specific intent crime.[1] What he was actually thinking is of critical importance. [Defendant's] entire defense to this case was that he did not really intend to break the law by enticing a minor to have sex. He defended this case on the ground that he intended to identify a person who was offering up a minor for sex.

For the jurors to evaluate that assertion, they certainly needed to know about [Defendant's] mental illness. The government's case was based on an argument that it would be completely bizarre for a person to have taken steps [Defendant] took without first calling law enforcement. [Defendant] should have been allowed to prepare a defense that informed the jury, that, in fact, he is a person who suffers from mental illness, and he legitimately may not proceed as a rational person would.

Even though his conduct may seem strange, he was not trying to commit a crime. To the contrary, from the moment of his arrest, he explained that he was trying to catch a criminal. A casual observer might find his explanation, provided by a "normal" person, to not make a great deal of sense or be persuasive. However, in evaluating [Defendant's] explanation, the jurors needed to know that, in fact, [Defendant] is mentally ill. While a mentally healthy person may not have tried to catch the Craigslist poster, a person with bipolar disorder may well have done so.

Aplt. Br. at 25–26.

This is an interesting argument, but we need not address it because it was not

raised below and Defendant does not argue for plain-error review on appeal. *See United*

---

[1] To establish a violation of § 2422(b), the government must prove that the defendant "(1) [used] a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce; (3) any individual who is younger than 18; (4) to engage in any sexual activity for which any person can be charged with a criminal offense or attempting to do so." *United States v. Faust*, 795 F.3d 1243, 1248 (10th Cir. 2015) (internal quotation marks omitted). "To prove an attempt crime, the government must prove (1) an intent to commit the substantive offense; and (2) the commission of an act which constitutes a substantial step towards commission of the substantive offense, . . . [which] must be something more than mere preparation." *United States v. Vigil*, 523 F.3d 1258, 1267 (10th Cir. 2008) (typographical errors corrected and internal quotation marks omitted). Thus, in this case the government had to show that Defendant intended to entice a girl under 18 years old to engage in criminal sexual activity.

*States v. McGlothin*, 705 F.3d 1254, 1267 (10th Cir. 2013) (if appellant forfeits an argument before the district court and then fails to explain in appellate briefing how the argument survives appellate review under the plain-error standard, then the appellant has waived the argument on appeal). In his pretrial motion he stated that he suffered from various mental illnesses. But he did not even attempt to explain how these disorders could negate any element of the charged crime. He wrongly assumes that simply putting the court on notice that he suffered from mental-health disorders was somehow enough to satisfy his burden. It is not the job of the court, however, to come up with arguments why a defendant's mental illness must have influenced his conduct in committing a crime.

Further, the court's order said that Defendant's motion was merely denied "at this time" for lack of the requisite showing. It left open the opportunity for Defendant to properly explain why the forensic psychologist was needed. If the need for such an expert should have been obvious to the court, Defendant could have easily explained the point. Yet Defendant never pursued the issue again. We cannot fault the district court for denying Defendant's motion in light of the remarkably sparse argument he proffered. We see no abuse of discretion here. (To the extent that Defendant attempts to raise for the first time on appeal a due-process challenge to the denial of an expert, we also decline to address that argument. *See id.*)

B.    **Exclusion of Evidence of Defendant's Mental-Health History**

At trial Defendant unsuccessfully requested that the district court permit him to offer evidence of his history of mental illness, including medical records from more than

five years past, his testimony, and his wife's testimony.  The court ruled that it was irrelevant.  "We review a district court's evidentiary rulings for abuse of discretion, considering the record as a whole."  *United States v. Trujillo*, 136 F.3d 1388, 1395 (10th Cir. 1998).  An evidentiary decision will not be reversed if it "falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *United States v. Wills*, 826 F.3d 1265, 1270 (10th Cir. 2016) (internal quotation marks omitted).

On appeal Defendant argues, as he did with respect to the denial of funds for a psychiatric expert, that this mental-illness evidence could support his defense that he was not seeking a sexual partner but was trying to catch a sexual predator.  He contends that the evidence would "explain[] that his arguably irrational behavior was the product of his mental illness."  Aplt. Br. at 34.  Again, however, he did not raise this argument in district court, so we will not address it.  *See McGlothin*, 705 F.3d at 1267.

What Defendant did argue in district court was that evidence of his mental illness was relevant to communicating his overall background to the jury.  To establish that Defendant offered no relevant purpose for the mental-health evidence, we set forth extended excerpts of defense counsel's colloquy with the court when he renewed his motion to admit the evidence.  During the colloquy, counsel made clear that the purpose of the evidence was simply to tell the jury what kind of person Defendant is:

> DEFENSE COUNSEL:  [A]s I understand the Court's order, I'm not allowed to introduce any evidence concerning his mental-health.
>
> However, in talking with him and providing the background for the jury of what he's – who he is and what he's doing, I think it is necessary to state at

least to a certain extent that, number one, that he's on – he's been on SSI [Social Security] since he was 17 for ADD, bipolar and depression, and that's what he's been doing for the last 10 years. He doesn't work.

So we at least need to explain that to the jury, that I think he should be allowed to say, "Hey, this is what I've been doing for the last 10 years. I was on medication. I was off medication because I didn't like it," whatever reason.
. . . .
[A]nd if you look at the instructions, the knowingly instruction also talks about a person's state of mind. And so the jury is going to consider his state of mind, and we're telling them to.
. . .
THE COURT [after also hearing from the prosecution]: How does the stated diagnosis speak to the considerations in Instruction 24 which is that he was conscious and aware of his actions, realized what he was doing or what was happening around him and did not act because of ignorance, mistake or accident? Even assuming that the diagnosis is – would be the diagnosis today by a qualified healthcare professional, how does that diagnosis relate to the instruction on knowingly?

DEFENSE COUNSEL: Well, Your Honor, I think we're talking about two different things here. And, number one, I am not trying to introduce this evidence as evidence that he had a mental defect at the time and did not act in accordance with the statute because of that mental defect.

What I am trying to introduce, simply, is that we have an individual that has mental issues or a mental diagnosis and he's been on SSI and it is part of his background. Now, there's a reason for that and the jury, I think, is going to want to know what he's – who this person is.

So, number one, I don't think anything is prohibitive of talking about an individual's background, what he's been doing. So I think that is fair game.
. . .
So I don't – like I said, I'm not going to use it. I don't think – I wasn't planning on bringing an expert to come in and testify that he suffers from depression, ADD and bipolar, and therefore, that's what – why he committed this act. . . .

And that's not what our intent is here. The only reason I want to introduce the records is to show that when he says, "yeah, I've been on SSI," that's documented and the jury doesn't think that he is faking it or just some person out there not – by choice not working in kind of a low-life situation by choice.

So we are not offering as mental health defense that information, but merely as background information and that's who this person is and what he's been doing. The jury can do whatever they want with it, I suspect.

R., Vol. 3 at 372–78.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. To be sure, "[t]he bar for admission under Rule 401 is very low"; the evidence need "only provide a fact-finder with a basis for making some inference, or chain of inferences." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation marks omitted). But Defendant's proffered ground for admitting this evidence did not meet even this low bar. Defense counsel never suggested a chain of inference from this evidence to an element of the crime or a defense.

We recognize that it is generally appropriate to humanize a witness by letting the witness tell the jury a few things about himself or herself. But even if such background information can be admissible, Federal Rule of Evidence 403 permits exclusion of even relevant evidence "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Courts must be cautious about admitting marginally relevant mental-health evidence because the jury may think that it provides an "excuse" for misconduct or it may otherwise generate sympathy for the defendant. *See United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990) ("[P]sychiatric evidence . . . presents an inherent danger that it will distract the jury[ ] from focusing on the actual presence or absence of mens rea, and . . . may easily slide

14

into wider usage that opens up the jury to theories of defense more akin to justification." (internal quotation marks omitted)). Here, the district court permitted some humanizing evidence, such as Defendant's testimony that he was unemployed and on social-security benefits, because it saw no danger of improper prejudice or confusing the jury. But it excluded the mental-health evidence, which it viewed as "just an effort to elicit sympathy." R., Vol. 3 at 378. This ruling was not an abuse of discretion.

### C. Exclusion of Character Evidence

Defendant argues that the district court abused its discretion in excluding evidence of his character for truthfulness after his credibility was allegedly attacked on cross-examination. He contends that the court's decision to exclude evidence of his character for truthfulness was based on a misapplication of Rule 608 of the Federal Rules of Evidence. "We review a trial court's exclusion of character evidence for abuse of discretion." *Tanberg v. Sholtis*, 401 F.3d 1151, 1167 (10th Cir. 2005). But we review de novo the district court's legal interpretation of the Federal Rules of Evidence. *See United States v. Torrez-Ortega*, 184 F.3d 1128, 1132 (10th Cir. 1999).

Under Rule 608 a witness's credibility ordinarily may be attacked by presenting evidence of the witness's character for untruthfulness, but positive evidence of a truthful character is permitted only in response to an attack on such character:

> Reputation or Opinion Evidence. A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

Fed. R. Evid. 608(a). An advisory committee note clarifies what constitutes an attack on character for truthfulness:

> Opinion or reputation that the witness is untruthful specifically qualifies as an attack under the rule, and evidence of misconduct, including conviction of crime, and of corruption also fall within this category. Evidence of bias or interest does not. Whether evidence in the form of contradiction is an attack upon the character of the witness must depend upon the circumstances.

Fed. R. Evid. 608(a) Advisory Committee Notes to 1972 proposed rules.

No firm line can be drawn regarding whether cross-examination of a witness amounts to an attack on the witness's character for truthfulness. But a useful test employed by the courts is whether the questioning attacks the veracity of the witness's account of the facts in the specific case before the court or attacks the witness's veracity in general. The Ninth Circuit expressed the point as follows:

> The purpose of Rule [608(a)] is to encourage direct attacks on a witness's veracity in the instant case and to discourage peripheral attacks on a witness's general character for truthfulness. To this end, the Rule prohibits rehabilitation by character evidence of truthfulness after direct attacks on a witness's veracity in the instant case. However, the Rule permits rehabilitation after indirect attacks on a witness's general character for truthfulness.

*United States v. Dring*, 930 F.2d 687, 690–91 (9th Cir. 1991); *see Renda v. King*, 347 F.3d 550, 554 (3d Cir. 2003) ("Direct attacks on a witness's veracity *in the particular case* do not open the door for evidence of the witness's good character." (emphasis added)).

Some circumstances are easy to characterize. For example, impeachment of the witness through evidence of a prior felony conviction or prior fraudulent activity is not

16

specific to the case being tried and amounts to an attack on character. *See Dring*, 930 F.2d. at 691 ("[I]ndirect attacks on truthfulness include opinion evidence, reputation evidence, and evidence of corruption, which require the jury to infer that the witness is lying at present simply because he has lied often in the past."); Weinstein's Federal Evidence § 608.12[1]; Roger Park & Tom Lininger, The New Wigmore: A Treatise on Evidence: Impeachment and Rehabilitation § 9.2 (2012). In contrast, a cross-examination that focuses on the witness's memory or perception does not implicate character. Also, evidence of bias generally is not an attack on character. The fact that the witness is a party's mother may lessen her credibility in this case, but it does not mean that she is usually an untruthful person. *See* Wigmore § 9.2 at 332. *But cf. id.* (if the proof of bias is that a party bribed the witness, the fact that the witness took a bribe is a reflection on character). And "most courts do not view contradiction of one witness's testimony by other witnesses as an attack on character." Weinstein § 608.12[4][ a]; *see United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005) ("An attack that consists only of Government counsel pointing out inconsistencies in testimony and arguing that the accused's testimony is not credible does not constitute an attack on the accused's reputation for truthfulness within the meaning of Rule 608." (internal quotation marks omitted)); *Kauz v. United States*, 188 F.2d 9, 10 (5th Cir. 1951) ("The mere fact that a witness is contradicted by other evidence in the case does not constitute an attack upon his reputation for truth and veracity.").

Perhaps the most difficult questions arise when a witness has been vigorously cross-examined. "[A] slashing cross-examination can carry strong accusations of

misconduct and bad character, which even the witness's forceful denial will not remove from the jury's mind." 1 McCormick on Evidence § 47 at 309 (7th ed. 2013) (footnote omitted). Those are situations in which our standard of review properly affords substantial discretion to the trial judge.

In this case there was nothing resembling an abuse of discretion in the district court's exclusion of Defendant's character-for-truthfulness evidence. The clear purpose of the prosecutor's cross-examination of Defendant was to obtain admissions for much of the government's case. Defendant not only admitted to what he did or did not do but also to the unreasonableness of his actions. The following excerpt gives a flavor of the cross-examination:

> Q: So despite your plan to try to protect this young child, you don't tell anyone over the course of five hours what you're doing?
>
> A: Yes.
>
> Q: Or where you're headed?
>
> A: Yes.
>
> Q: Doesn't that seem dangerous?
>
> A: Yes.
>
> Q: For you?
>
> A: Yes.
>
> Q: For the girl?
>
> A: Yes.
>
> Q: You brought up condoms in these conversations, correct?
>
> A: Yes.

18

Q: You actually proposed having oral sex with a 12-year-old correct?

A: Yes.

Q: You repeatedly brought up all kinds of different sex acts that you and this 12-year-old girl could engage in, correct?

A: Yes.

Q: You have testified that you were concerned about the welfare of this girl; is that right?

A: Yes.

Q: And that you wanted to save her?

A: Yes.

Q: And I'm assuming you didn't want to cause her any trauma or pain?

A: No.

Q: But you didn't care enough to not ask for a photo, did you?

A: No.

Q: Don't you think that it would be traumatic, for this girl's photo to be shared?

A: Yeah.

Q: You specifically asked for more photos, didn't you?

A: Yes.

Q: And you specifically requested full-body photos with no face?

A: Yes.

Q: Would you not agree that not having the face in those photos would actually make it more difficult to hold this person accountable?

A: Yes.

Q: You were wanting to actually hold this person accountable. Wouldn't you want to see who the girl actually is?

A: Yes.

Q: But instead, you specifically request no face photos, correct?

A: Yes.

Q: And you sent a photo of yourself and block all identifiers, don't you?

A: Yes.

Q: You also don't care enough about the safety of this child to not speak to her, correct?

A: Yes.

R., Vol. 3 at 412–14. On two occasions Defendant initially disagreed with the prosecutor, but then the matter was clarified and the prosecutor did not challenge his answer. *See id.* at 411[2]; *id.* at 416[3]. The only occasion when the prosecutor was clearly challenging the veracity of Defendant's testimony was the final exchange: "Q: You showed up to take her V card, didn't you? A: No." *Id.* at 418.

---

[2]   Q: And I believe you indicated before that you don't feel like you're very Internet [savvy]? Is that how you said that?
A: No.
Q: Yet you specifically informed the purported father in this case how to share a picture with you on Kik, correct?
A: That's totally different than –
Q: So you're Internet [savvy] when it comes to Kik, but not Internet [savvy] on Craigslist where you're specifically going to a certain section on there?
A: Yes.

[3]   Q: So you showed up ready to meet the girl, correct?
A: No.
Q: Is that a yes or a no?
A: No.
Q: You showed up to meet her father, is that what you're indicating?
A: Yes.

As the district court observed, "The defendant's response to virtually every question by the Government was yes." *Id.* at 431. Rather than challenging Defendant's veracity, the prosecutor generally wanted the jury to believe all his answers except the last. Indeed, the frankness of Defendant's admissions on cross-examination likely led the jury to conclude that Defendant was basically a truthful person. But given all those admissions, it would be impossible to believe that he was really intending to act as an agent of law enforcement rather than as a sexual predator. The prosecution was challenging Defendant's veracity with respect to a specific issue in the present case (his intent), not his general truthfulness. *See Renda*, 347 F.3d at 554; *Dring*, 930 F.2d at 690–91. And the basis for the challenge was merely the unbelievability of his statement of his intent in light of the undisputed facts. *See Kauz*, 188 F.2d at 10 ("The mere fact that a witness is contradicted by other evidence in the case does not constitute an attack upon his reputation for truth and veracity.") If this be an attack on Defendant's character for truthfulness, then such an attack occurs whenever the prosecution puts on evidence contrary to a witness's account. We decline to interpret Rule 608(a) as permitting evidence of a witness's character for truthfulness whenever the witness's testimony is challenged.

## III.   CONCLUSION

We **AFFIRM** Defendant's conviction.

21