**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3095
_____

DAMIEN PRESTON,

Appellant

v.

SUPERINTENDENT GRATERFORD SCI;
THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 12-cv-06011)
District Judge: Honorable Gene E. K. Pratter

_____

Argued April 18, 2018

Before: GREENAWAY, JR., RENDELL, and FUENTES,
Circuit Judges

(Opinion filed: September 5, 2018)

Ariana J. Freeman, Esq.
Thomas C Gaeta, Esq.               [ARGUED]
Leigh M. Skipper, Esq.
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut St.
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Counsel for Appellant, Damien Preston*

Simran Dhillon, Esq.
Max C. Kaufman, Esq.               [ARGUED]
Nancy Winkelman, Esq.
Lawrence S. Krasner. Esq.
Carolyn Engel Temin, Esq.
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107
        *Counsel for Appellees, Graterford SCI and The*
        *Attorney General of the State of Pennsylvania*

_____

O P I N I O N
_____

**RENDELL**, <u>Circuit Judge</u>:

Damien Preston seeks habeas relief based on an alleged violation of his rights under the Confrontation Clause of the United States Constitution. We agree that the use of a witness's prior statements against Preston violated the

Confrontation Clause because the witness, Leonard Presley, refused to answer any substantive questions on cross-examination. However, Preston's Confrontation Clause claim is procedurally defaulted.

Preston argues that ineffective assistance of trial counsel ("IATC"), namely, counsel's failure to raise a Confrontation Clause objection at trial, provides cause to excuse the procedural default of the underlying Confrontation Clause claim. Before his IATC claim, which is itself procedurally defaulted, can serve as cause to excuse the procedural default of his Confrontation Clause claim, Preston must surmount two obstacles. First, he must overcome the procedural default of his IATC claim. Second, he must demonstrate that trial counsel's performance was constitutionally ineffective under the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). We find that, under *Martinez v. Ryan*, 566 U.S. 1 (2012), the procedural default of his IATC claim is excused. However, because he cannot show that he was prejudiced by trial counsel's failure to raise a Confrontation Clause objection, Preston's IATC claim fails at the second prong of the *Strickland* analysis. Therefore, we are unable to grant Preston habeas relief, and we will affirm the District Court's order dismissing Preston's habeas petition.

## I. BACKGROUND[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have appellate jurisdiction to review the

3

Damien Preston is currently serving a twenty- to forty-year sentence for third degree murder for his role in the 2000 death of Kareem Williams, who was shot in the midst of a physical fight with Preston and his brother Leonard Presley.[2]

## A. Leonard's Trial

In 2001, Leonard was arrested for his role in the shooting and tried before a jury in Pennsylvania state court. At his trial, Leonard took the stand in his own defense. In testimony that was consistent with the statement he gave to police after he was arrested, Leonard explained that, on the day of the shooting, he parked his car on the 1900 block of Dennie Street in Philadelphia. Williams and a woman named Latoya Butler were sitting in front of a house on the same block. Preston and another man named Chris were also standing on the block. Leonard approached Williams and asked to have a word with him. The two men walked a short distance down the street and had a brief conversation about a rumor Leonard had heard about Williams. Williams then walked away and entered an alley off of Dennie Street, where he retrieved a bag and tucked "something shiny" into the waistband of his pants. JA773. According to Leonard, the

---

certified issues under 28 U.S.C. §§ 1291 and 2253. Our review is plenary where, as here, the District Court did not conduct an evidentiary hearing and relied on the state court record. *Robinson v. Beard*, 762 F.3d 316, 323 (3d Cir. 2014).

[2] 18 Pa. Cons. Stat. § 2502(c). Preston was also found guilty of possessing a criminal instrument in violation of 18 Pa. Cons. Stat. § 907(b) and sentenced to an additional three to sixty months' imprisonment for that offense.

shiny object "looked like" a gun. *Id.* Williams told Butler that he would "be back," continued down Dennie Street, and turned the corner onto Wayne Avenue. Leonard followed Williams around the corner onto Wayne Avenue, and the two men began fighting.

At one point during the fight, Williams had his back against the hood of a car parked along Wayne Avenue, with Leonard facing him. According to Leonard, Preston then came up behind him and began swinging at Williams over Leonard's shoulder. Leonard heard a gunshot, turned around, and saw Preston running away. Leonard ran away as well, passing Butler on the corner of Dennie Street and Wayne Avenue. Leonard did not see who fired the shot, but he testified that it came from somewhere behind him. Leonard, Preston, and Williams were the only people involved in the fight. Leonard testified that he had not shot Williams and that Williams could not have shot himself because the shot came from behind Leonard, who was facing Williams. Therefore, Leonard "guess[ed]" his brother had shot Williams. JA776. Leonard was found guilty of third degree murder.

**B. Preston's Trial**

A year later, Preston was arrested for his role in Williams's death. He was tried before a jury in October 2003 in the Pennsylvania Court of Common Pleas. Preston was represented by counsel at trial.

1. The Commonwealth's Case-in-Chief

5

The Commonwealth's primary witness at Preston's trial was Latoya Butler. Butler testified that she and Williams were sitting on a porch on the 1900 block of Dennie Street on the day of the shooting. Leonard pulled up in a car and joined Preston and Chris on a nearby porch. Leonard approached Williams and asked to speak with him. Leonard and Williams walked down the street and spoke briefly. Williams returned to Butler's porch looking "upset" and told her that he would "be back." JA522. As Williams walked away, Leonard told him "You better come back with something big because I'm playing with them big boys." JA522. Williams walked down Dennie Street and stopped in an alleyway, where he "picked up something." JA522. He continued down Dennie Street and turned onto Wayne Avenue. Leonard followed Williams onto Wayne Avenue. After a few moments, Preston, followed by Butler, walked down Dennie Avenue and turned the corner onto Wayne Avenue as well.

Butler testified that when she turned the corner onto Wayne Avenue, she saw the three men fighting. Leonard had Williams pinned down on the hood of a parked car, and he and Preston were hitting Williams. According to Butler, Preston backed up "about two steps," so he was standing to the left of Williams. JA524. She testified that "the way [Leonard] had [Williams] pinned down, [Williams's] whole left side was open for [Preston] to shoot him." JA525. Preston stretched out his right arm and aimed "something" at Williams. JA524. Preston's hand and whatever was in it were covered by a sweatshirt. Butler then heard a "big loud pop" and heard Preston ask Williams "You want some more, you want some more?" JA525. Williams fell "flat on his face." JA526. Preston and Leonard fled, passing Butler on the corner of Dennie Street and Wayne Avenue. As Butler

6

approached Williams, he told her "They got me." JA526. Butler accompanied Williams to the hospital, where she gave police a statement that was consistent with her in-court testimony and identified Preston and Leonard in a photo array.

Butler also testified to the pre-existing animus between Williams and the two brothers. According to Butler, Preston and Leonard had sold drugs on the 1900 block of Dennie Street for several years. About four months before the shooting, Williams began selling drugs on the same block. Shortly before the shooting, Preston had confronted Williams and told him he could no longer sell drugs there because he wasn't "from the block." JA520. Preston and Williams had also had at least one physical altercation in the past.

The jury also heard from the medical examiner, whose testimony largely corroborated Butler's. He testified that Williams had been shot in the left buttock area and that the trajectory of the bullet was consistent with a shooter standing on Williams's left side. He also testified that Williams's facial injuries indicated that he had fallen flat on his face after being shot. Although he could not conclude that Williams had been shot at close-range, the medical examiner testified that he had been unable to examine Williams's clothing, which may have contained evidence of a close-range shooting. He also testified that if the muzzle of the weapon had been covered by a sweatshirt, as Butler testified it was, it would have filtered out evidence of a close-range shooting.

Law enforcement officers testified to the physical evidence recovered from the scene. Officers recovered a bullet from the street in front of a parked car on Wayne

7

Avenue. The hood of the parked car was dented, as one would expect if a body had been pressed against it. The Commonwealth also introduced evidence that Preston fled to North Carolina after the shooting and that no gun was recovered from Williams's body.

The Commonwealth then called Leonard as a witness. Leonard asserted his Fifth Amendment privilege against self-incrimination and refused to testify. Leonard was concerned that his testimony would jeopardize the pending appeal of his own criminal conviction. He was granted immunity by the District Attorney's office and was therefore compelled to testify. *See Kastigar v. United States*, 406 U.S. 401, 458 (1972) ("use and derivative-use immunity is constitutionally sufficient to compel testimony over a claim of the privilege"). Apparently, this did not assuage Leonard's concerns, and he again refused to testify. *See* JA599 (Leonard replying "No comment. No comment." to the Commonwealth's questions); JA606 ("I'm in a state of appeal. That's why I said no comment, because I'm in the course of my appeal."). The Commonwealth sought to introduce both the statement Leonard had given to police after his arrest and his testimony from his own criminal trial as admissible hearsay under *Commonwealth v. Brady*, 507 A.2d 66 (Pa. 1986).[3] Defense counsel said he had "no problem with [Leonard] being Bradyized" using his police statement. JA598. However, counsel did object to the admission of Leonard's prior

_____

[3] In *Brady*, the Pennsylvania Supreme Court announced that, as a matter of state common law, a non-party's prior inconsistent statement may be used as substantive evidence when the declarant is a witness at trial and available for cross-examination. 507 A.2d at 70.

testimony. He noted that he did not have a chance to cross-examine Leonard, but framed his objection along the lines of Pennsylvania Rule of Evidence 804(b), rather than as a Confrontation Clause claim.[4] JA598.

The trial court allowed the Commonwealth to use both Leonard's police statement and his prior testimony. The prosecutor read aloud portions of the two statements, occasionally stopping to ask Leonard if he remembered making them. Leonard largely replied "no comment." In this manner, the jury heard Leonard's version of events, as described above. Defense counsel then attempted to cross-examine Leonard. With three exceptions, Leonard replied "no comment" to every question asked by defense counsel.[5]

## 2. The Defense's Rebuttal

[4] Trial counsel's objection focused on Preston's inability to cross-examine Leonard at the time Leonard gave his prior testimony, i.e., at Leonard's trial. *See* JA598. Pennsylvania Rule of Evidence 804(b), provides that testimony given under oath is not hearsay if offered against a party who had an opportunity and similar motive to develop it by direct-, cross-, or redirect-examination at the time the prior testimony was given. Trial counsel did not focus on Preston's inability to cross-examine Leonard at Preston's own trial, which would have signaled that counsel was objecting on Confrontation Clause grounds.

[5] When asked if he planned on responding "no comment" to all of defense counsel's questions, Leonard replied "Yes, sir." JA624. When asked if Preston was Leonard's younger brother, Leonard answered "Yes." JA625. And when asked if his parents and sister were sitting in the courtroom, Leonard answered "Yes." *Id.*

9

Preston took the stand in his own defense. His testimony was nearly identical to Butler's and Leonard's. He testified that he, Leonard, Chris, Butler, and Williams were all on the 1900 block of Dennie Street on the day of the shooting and that Leonard asked to speak with Williams. Leonard and Williams walked down the street and had a brief conversation. Williams looked upset, and it was clear that there was some sort of "problem." JA682. Williams told Butler he would "be back" and walked down Dennie Street and around the corner onto Wayne Avenue. *Id.* Leonard yelled something at Williams as he walked away, then he followed Williams around the corner. Preston followed Leonard, and when he turned the corner he saw the two men fighting. Williams was pressed against the hood of a parked car, with Leonard facing him. Preston joined the fight and began swinging at Williams over Leonard's shoulder. Then he heard a gunshot and ran away, passing Butler on the corner of Wayne Avenue and Dennie Street. Contrary to Butler's and Leonard's versions of events, Preston testified that he had not fired the shot and didn't have "any idea" where the gunshot came from. JA673.

The defense called two additional eyewitnesses, Kenneth Stanfield and Christopher Malloy. Stanfield testified that he saw the three men fighting on the hood of a parked car and heard a shot come from the direction of the three men. He did not know who fired the shot and he had not seen anyone with a gun. He also testified that Latoya Butler didn't turn the corner onto Wayne Avenue until after the shot was fired. Contrary to Butler's testimony, he testified that Preston was standing to the right of Williams. However, Stanfield's testimony suffered from several inconsistencies. For example, he testified that Leonard drove his car around the corner of

Dennie Street and parked it on Wayne Avenue before engaging with Williams, whereas all the other eyewitnesses testified that Leonard followed Williams on foot. He also testified that he learned of Williams's death the same day as the shooting, which was impossible because Williams did not die from his wounds until the following day.

Malloy also testified that he saw the three men fighting. Although he did not see any of them with a gun, he intimated that Williams's wound had been self-inflicted. *See* JA657 (testifying that neither Preston nor Leonard had a weapon and that right before the shot was fired he saw Williams "reach in back" to grab something). He also testified that he did not see Butler turn the corner onto Wayne Avenue until after the shot was fired. Like Stanfield's testimony, Malloy's testimony was marred by several inconsistencies. For example, he testified that the three men were fighting on the sidewalk, not on the hood of a parked car. This was inconsistent with all the other eyewitness testimony as well as the physical evidence recovered from the scene. And Malloy's suggestion that the gunshot wound was self-inflicted contradicted the medical examiner's conclusion that Williams had been shot by someone standing to his left.

At the close of the evidence, the jury was instructed to consider first, second, and third degree murder.[6] The jury was

---

[6] *See* JA720:

> Third-degree murder is any killing with malice that is not first- or second-degree murder. You may find the defendant guilty of third-degree murder if you are satisfied

also instructed on accomplice liability.[7] The members of the jury were permitted to consider Leonard's police statement

that the following three elements have been proven beyond a reasonable doubt: First, that Kareem Williams is dead; second, that the defendant killed him; and, third, that the defendant did so with malice. . . . For third-degree murder, the malice that is needed is the intent to cause serious bodily injury. . . .[I]f you decide that there was an intent to inflict serious bodily injury and then as a result of that injury death results, that is third-degree murder.

[7] *See* JA723:

You may find the defendant guilty of a crime without finding that he personally engaged in the conduct required for commission of that crime. A defendant is guilty of a crime if he is an accomplice of another person who commits that crime. A defendant does not become an accomplice merely by being present at the scene. He is an accomplice if, with the intent of promoting or facilitating commission of the crime, he encourages the other person to commit it or aids or attempts to

12

and prior testimony as substantive evidence, but they were told to view that evidence with disfavor because Leonard was an accomplice to the crime. The jury found Preston guilty of third degree murder, and he was sentenced to twenty to forty years' imprisonment.

## C. Preston's Direct Appeal

Preston was appointed new counsel on direct appeal. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), direct appeal counsel filed a statement setting out the matters complained of on appeal. In the 1925(b) statement, counsel challenged the sufficiency of the evidence against Preston and the use of Leonard's prior testimony. However, he framed the use of Leonard's prior testimony as a violation of the Pennsylvania Rules of Evidence, not the Confrontation Clause.[8]

---

aid the other person in committing it. You may find the defendant guilty of a crime on the theory that he was an accomplice as long as you are satisfied beyond a reasonable doubt that the crime was committed and that the defendant was an accomplice of the person who committed it. It does not matter whether the person you believed committed the crime has been convicted of a different crime or degree of crime.

[8] *See* JA192 ("[T]he Court permitted, over defense objection, the Commonwealth to use notes of testimony from Leonard

The Pennsylvania Superior Court found Preston's challenge to the sufficiency of the evidence to be without merit. *Commonwealth v. Preston*, No. 598 EDA 2004, slip op. at 5-6 (Pa. Super. Ct. Oct. 22, 2007). As to Leonard's prior testimony, the Superior Court found that that the evidence was admissible under a hearsay exception under the Pennsylvania Rules of Evidence. *Id.* at 6-11. *See* Pa. R. Evid. 803.1(1) (a prior statement by a declarant-witness that is inconsistent with the declarant-witness's testimony is not excluded by the rule against hearsay if it was given under oath subject to penalty of perjury). The Superior Court also noted that any challenge to the admission of Leonard's police statement had been waived because it had not been properly preserved and presented to the trial court. *Preston*, No. 598 EDA 2004, slip op. at 7. The Pennsylvania Supreme Court denied allocatur. *Commonwealth v. Preston*, 945 A.2d 169 (Pa. Mar. 26, 2008) (table).

---

Presley's own trial to cross-examine [Leonard]. *At that trial*, the defendant was not a party, nor did he have a representative present, who would have cross-examined [Leonard]." (emphasis added)). Like trial counsel, direct appeal counsel was concerned with admissibility under Pennsylvania Rule of Evidence 804(b), which provides that testimony given under oath is not hearsay if offered against a party who had an opportunity and similar motive to develop it by direct-, cross-, or redirect-examination at the time the prior testimony was given. The Confrontation Clause issue here is Preston's inability to cross-examine Leonard during Preston's trial, not his inability to cross-examine Leonard at the time Leonard gave the prior testimony.

## D. PCRA Review

Preston filed a timely *pro se* petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. §§ 9541-46., and was appointed counsel. Before the Court of Common Pleas, PCRA counsel raised four claims, including a claim that the use of Leonard's prior statements violated Preston's Confrontation Clause rights. However, PCRA counsel did not claim that trial counsel had rendered ineffective assistance by failing to raise and preserve the Confrontation Clause issue at trial. The Court of Common Pleas dismissed Preston's PCRA petition as without merit.

Preston, still represented by PCRA counsel, filed a notice of appeal to the Superior Court. While Preston's PCRA appeal was pending, the Court of Common Pleas issued a written opinion finding that Preston's Confrontation Clause rights had been violated, but it did not grant Preston PCRA relief or reverse its previous order dismissing Preston's PCRA petition.[9] *Commonwealth v. Preston*, No. CP-51-CR-

---

[9] Although the Court of Common Pleas concluded that Preston's Confrontation Clause rights had been violated, it did not go so far as to conclude that Preston was entitled to PCRA relief based on the Confrontation Clause error. "In order to establish a right to relief in a [PCRA] proceeding, the petitioner must demonstrate not only that an error has occurred but also that the error has prejudiced him." *Commonwealth v. Knox*, 450 A.2d 725, 728 (Pa. Super. Ct. 1982). The Court of Common Pleas left the harmless error analysis for the Superior Court to conduct on appeal, if necessary. *See Preston*, No. CP-51-CR-0607901-2002, slip op. at 14 n.21 ("Because this Court finds that the admission of

0607901-2002, slip op. at 8-14 (Phila. Comm. Pl. Ct. Dec. 30, 2010). After briefing, the Superior Court affirmed the dismissal of Preston's PCRA petition. *Commonwealth v. Preston*, No. 2171 EDA 2010 (Pa. Super. Ct. Feb. 23, 2012) (table). Pennsylvania Supreme Court denied allocatur. *Commonwealth v. Preston*, 50 A.3d 692 (Pa. Aug. 22, 2012).

## E. Federal Habeas Review

Preston filed a timely *pro se* federal habeas petition in the Eastern District of Pennsylvania. He claimed that the use of Leonard's police statement and prior testimony violated Preston's rights under the Confrontation Clause, that trial counsel was ineffective for failing to raise and preserve the Confrontation Clause claim, that PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness, and that PCRA counsel's ineffective assistance caused the procedural default of Preston's IATC claim. The petition was referred to the Magistrate Judge.

The Magistrate Judge recommended that Preston's petition be denied and dismissed. He reasoned that Preston had not suffered a deprivation of his Confrontation Clause rights because the trial judge had not limited the scope of defense counsel's cross-examination and because, through the questions he asked Leonard on cross-examination and through his closing argument, defense counsel was able to

Mr. Presley's prior trial testimony was improper under the Confrontation Clause, a harmless error analysis must be done. . . . [S]hould the Superior Court agree that the admission of the prior trial testimony was improper, the harmless error analysis can be completed at that juncture.").

16

"put before the jury the notion that [Leonard] was not credible[.]" JA34. The Magistrate Judge considered Leonard's refusal to answer any of defense counsel's questions insignificant because "the constitutional right to confront one's accuser does not guarantee a perfect confrontation." JA34 (citing *United States v. Owens*, 484 U.S. 554, 560 (1988) and *Delaware v. Fensterer*, 474 U.S. 15, 21-22 (1985) (per curiam)). In the alternative, he concluded that any error the trial court had made in admitting Leonard's prior statements was harmless. The District Court approved and adopted the Magistrate Judge's Report and Recommendation and dismissed Preston's petition with prejudice.

Preston timely appealed to this Court. We appointed counsel and granted him a Certificate of Appealability on several issues:

1. Whether the admission of Leonard's prior statements violated Preston's rights under the Confrontation Clause in light of Leonard's refusal to answer any substantive questions on cross-examination;
2. Whether trial counsel rendered ineffective assistance by failing to raise that issue;
3. Whether the failure of PCRA counsel to raise Preston's claims of trial counsel ineffectiveness constitutes cause to excuse the default of that claim under *Martinez*, 566 U.S. 1;
4. Whether Preston's claims of trial and appellate counsel's ineffectiveness themselves show cause and

17

prejudice to excuse the default of his underlying Confrontation Clause claim. [10]

## II. ANALYSIS

The constitutional claim at the heart of Preston's habeas petition is that the use of Leonard's prior statements violated Preston's Confrontation Clause right to confront witnesses against him because Leonard refused to answer any substantive questions on cross-examination. "Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground." *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). Preston's Confrontation Clause claim is procedurally defaulted because trial counsel failed to raise and preserve the Confrontation Clause issue.

---

[10] Preston's habeas petition also included a claim that direct appeal counsel's untimely filing of the 1925(b) statement constituted ineffective assistance of counsel. The District Court adopted the Magistrate Judge's recommendation to dismiss the ineffective assistance of direct appeal counsel because Preston had not been prejudiced by direct appeal counsel's error. *See Strickland v. Washington*, 466 U.S. 668 (1984). Preston was not granted a certificate of appealability on this issue. This Court also denied Preston a certificate of appealability on his claim of ineffective assistance of PCRA counsel to the extent that Preston asserted it as a substantive ground for habeas relief. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.").

*See* 42 Pa. Cons. Stat. § 9544(b) ("an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"). Nonetheless, a petitioner may overcome the prohibition on reviewing procedurally defaulted claims if he can show "cause" to excuse his failure to comply with state procedure and "actual prejudice resulting from the alleged constitutional violation." *Davila*, 137 S. Ct. at 2065 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)) .[11]

"[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court" provides cause to excuse the procedural default of the underlying claim. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). As Preston concedes, his IATC claim is itself procedurally defaulted because PCRA counsel failed to raise trial counsel's ineffectiveness on state collateral review. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (claims of trial counsel ineffectiveness are waived if not

---

[11] Alternatively, a petitioner can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). However, this exception is limited to a "severely confined category[] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)). Preston has not urged that this exception applies here.

raised on PCRA review). Preston's IATC claim cannot provide cause to excuse the procedural default of his Confrontation Clause claim unless he can overcome the procedural default of the IATC claim. *See Edwards*, 529 U.S. at 451-52 ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself."). Thus, we turn first to Preston's argument that he can overcome the procedural default of his IATC claim under *Martinez*, 566 U.S. 1.

## A. Preston can overcome the procedural default of his IATC claim under *Martinez*.

Under *Martinez*, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, . . . counsel in that proceeding was ineffective." 566 U.S. at 17.

"[W]here state law requires a prisoner to raise claims of ineffective assistance of trial counsel in a collateral proceeding, rather than on direct review, a procedural default of those claims will not bar their review by a federal habeas court if three conditions are met: (a) the default was caused by ineffective assistance of post-conviction counsel or the absence of counsel (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim could be heard) and (c) the underlying claim of trial counsel ineffectiveness is 'substantial[.]'" *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014) (quoting *Martinez*, 566 U.S. at

20

14). All three of the *Cox* requirements are met in this case.[12] *See Torrez-Ortega*, 184 F.3d at 1133 ("The only answers that the government cites as departing from th[e] pattern [of obstinacy] are too elliptical and confusing to demonstrate that the defendants were ever presented with an opportunity for effective cross-examination.").

The procedural default of Preston's IATC claim was caused by PCRA counsel's failure to raise the IATC claim before the state court on collateral review. *See Grant*, 813 A.2d at 738 (claims of trial counsel ineffectiveness are waived if not raised on PCRA review). In order to satisfy the first *Cox* requirement, Preston must demonstrate that this constituted deficient performance under the first prong of the *Strickland* analysis—meaning that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688.[13] *See Brown v. Brown*, 846 F.3d 502, 513 (7th Cir. 2017) ("To demonstrate cause under

---

[12] To be precise, *Martinez* applies if state law, "either expressly or as a matter of practicality," bars prisoners from raising IATC claims on direct appeal. *Cox*, 757 F.3d at 124 n.8 (citing *Trevino v. Thaler*, 569 U.S. 413, 415-17 (2013)). Pennsylvania state law requires prisoners to raise IATC claims on PCRA review, rather than on direct review. *Id.* (citing *Grant*, 813 A.2d at 738).

[13] Under the first prong of the *Strickland* analysis, often referred to as the "performance" prong, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Under the second prong, often referred to as the "prejudice" prong, he or she must demonstrate prejudice as a result of counsel's deficient performance. *Id.* at 692.

*Martinez-Trevino*, the petitioner must show deficient performance by counsel on collateral review as required under the first prong of the *Strickland* analysis. Actual resulting prejudice can be established with a substantial claim of ineffective assistance of trial counsel that would otherwise have been deemed defaulted." (citations omitted)); *Detrich v. Ryan*, 740 F.3d 1237, 1246 (9th Cir. 2013) ("[N]o showing of prejudice from PCR counsel's deficient performance is required, over and above a showing that PCR counsel defaulted a substantial claim of trial-counsel [ineffectiveness], in order to establish cause for the procedural default." (internal quotations marks omitted)).

We find that PCRA counsel's performance was objectively unreasonable. Counsel clearly recognized that the admission of Leonard's prior statements may have violated Preston's Confrontation Clause rights, as he included a Confrontation Clause claim in the state collateral review petition. However, PCRA counsel failed to include an IATC claim or otherwise acknowledge trial counsel's failure to preserve the Confrontation Clause issue. Appellees have not provided, nor can we discern, any strategic explanation for PCRA counsel's decision. *See Strickland*, 466 U.S. at 689 (noting a presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy'" (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1995))). Thus, the first *Cox* requirement is satisfied.

The second *Cox* requirement is also satisfied here, as PCRA counsel failed to raise the IATC claim in the initial-review collateral proceeding before the Court of Common Pleas.

The final *Cox* requirement is met if Preston's IATC claim is "'substantial,' meaning 'the claim has some merit,' analogous to the substantiality requirement for a certificate of appealability." *Cox*, 757 F.3d at 119 (quoting *Martinez* 556 U.S. 1, 14)). Thus, the question, for *Martinez* purposes, is merely whether "reasonable jurists could debate" that Preston's IATC claim has merit, or whether the claim is "adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483 (2000)). In considering whether Preston's IATC claim is substantial, we are guided by the two-part *Strickland* analysis, but we remain mindful that the "substantiality" inquiry "does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.*

Preston's IATC claim is "adequate to deserve encouragement to proceed further." *Id*. As explained in greater detail below, trial counsel's performance fell below an objective standard of reasonableness, satisfying the performance prong of *Strickland*. There was merit to the Confrontation Clause objection, and there was no discernible strategic reason why trial counsel would refrain from making the objection—counsel did, after all, make an objection based on the Pennsylvania Rules of Evidence. With respect to the prejudice prong of *Strickland* as it might have been envisioned in *Martinez*, the *Martinez* Court does not address it, other than to say at the conclusion of the opinion that the court of appeals "did not address the question of prejudice." *Id.* at 18. It would seem that, in light of the relatively light "substantiality" test regarding the merits of the IATC claim, a strict prejudice analysis for *Martinez* purposes would be misplaced. Indeed, the Ninth Circuit Court of Appeals

23

addressed this issue and reasoned that if a petitioner "were required to show prejudice, in the ordinary *Strickland* sense," at the *Martinez* stage, "this would render superfluous the . . . *Martinez* requirement of showing that the underlying *Strickland* claims were 'substantial'—that is, that they merely had 'some merit.'" 740 F.3d at 1246 (quoting *Martinez*, 566 U.S. at 14). In other words, a somewhat relaxed prejudice analysis, in the *Detrich* court's eyes, was "necessary to harmonize" the various *Martinez* requirements. *Id.*

It could be that the need for a showing of prejudice at the *Martinez* stage might rise and fall depending upon the strength of the IATC claim. Here, where counsel's performance in failing to assert the Confrontation Clause claim seems clearly substandard under the first prong of *Strickland*, we need not concern ourselves with the prejudice prong of *Strickland* in order to satisfy *Martinez* and excuse the procedural default of the IATC claim. Were the substandard performance not so clear, we might require more of a showing of harm before letting the case advance to a full-blown *Strickland* analysis.

## B. Preston's IATC claim fails under *Strickland*.

Although he can overcome the procedural default of his IATC claim under *Martinez*, Preston's IATC claim cannot provide cause to excuse the procedural default of his underlying Confrontation Clause claim unless trial counsel's performance was constitutionally ineffective. *See Edwards*, 529 U.S. at 451 ("Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. In other words, ineffective assistance adequate to establish cause for

the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." (citation omitted)). Thus, Preston must demonstrate that trial counsel was constitutionally ineffective for failing to raise a Confrontation Clause objection to the admission of Leonard's prior statements at trial under the two-pronged test established in *Strickland*.[14]

---

[14] We acknowledge that the Magistrate Judge did not analyze the merits of Preston's IATC claim under the *Strickland* framework. We also acknowledge that we generally "do[] not consider an issue not passed upon below" and typically remand for the District Court to consider such issues in the first instance. *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 149 (3d Cir. 2016) (quoting *Singleton* v. *Wulff*, 428 U.S. 106, 120 (1976)). Nonetheless, we find that remand is unnecessary in this case because the Magistrate Judge, in the Report and Recommendation adopted by the District Court, did in fact rule on the very issues on which the merits of Preston's IATC claim turns. He ruled on the merits of the underlying Confrontation Clause claim—the key issue under the performance prong of *Strickland* in this case. As part of that analysis, the Magistrate Judge also ruled that any error in the admission of Leonard's prior statements was harmless—the very issue on which the prejudice prong of *Strickland* turns. Because the Magistrate Judges has "passed on" these issues, remand in this case would be little more than a formality. Thus, we will reach the merits of Preston's IATC claim in the interest of judicial economy, but we note that remand may be the appropriate remedy in other cases.

We also note that, in some cases, an evidentiary hearing may be necessary to determine whether trial counsel

## 1. Preston satisfies *Strickland*'s performance prong.

Under *Strickland*'s performance prong, we ask whether counsel's performance clearly fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Preston's IATC claim centers upon trial counsel's failure to raise a Confrontation Clause objection to the admission of Leonard's prior statements. Because "counsel cannot be deemed ineffective for failing to raise a meritless claim," *Ross v. Dist. Att'y of the Cty. of Allegheny*, 672 F.3d 198, 211 n.9 (3d Cir. 2012) (quoting *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000)), we must consider whether a Confrontation Clause objection would have been meritless.

Over fifty years ago, the Supreme Court held that the Confrontation Clause barred the use of a witness's prior statement when the witness refused to answer questions on cross-examination. *Douglas v. Alabama*, 380 U.S. 415 (1965). In Douglas's trial for assault, the state called as a witness a man who had been indicted along with Douglas and

---

was ineffective. *See Martinez*, 566 U.S. at 11-12 (noting that IATC claims can require "investigative work" and that "the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record"). A hearing may be particularly useful when a petitioner's IATC claim turns on the performance prong of *Strickland*. *See Detrich*, 740 F.3d at 1246 ("For example, to determine whether an attorney's performance was deficient, it is often necessary to ask the attorney to state the strategic or tactical reasons for his or her actions."). Here, where Preston's IATC claim fails on the prejudice prong of *Strickland*, and the factual record is fully developed on that issue, no evidentiary hearing is necessary.

found guilty in a separate trial. *Douglas*, 380 U.S. at 416. The witness was concerned that his testimony would negatively impact his own criminal proceedings. *Id.* Although the trial court ruled that the witness did not have a valid claim of Fifth Amendment privilege, the witness refused to answer any questions on direct- or cross-examination. *Id.* The prosecutor was permitted to introduce portions of a written confession previously signed by the witness, which implicated Douglas in the assault. *Id.* at 416-17.

The Supreme Court held that Douglas had been denied the "right of cross-examination secured by the Confrontation Clause." *Id.* at 419. "Although the [prosecutor's] reading of [the witness's] alleged statement, and [the witness's] refusals to answer, were not technically testimony, . . . [the witness's] reliance upon the privilege created a situation in which the jury might improperly infer both that the statement had been made and that it was true." *Id.* Because these inferences "could not be tested by cross-examination[,]" use of the witness's prior statement violated Douglas's rights under the Confrontation Clause. *Id.*

Since *Douglas*, at least two Circuit Courts of Appeals have also held that the use of a witness's prior statement violates a defendant's rights under the Confrontation Clause when the witness refuses to answer questions on cross-examination. *See United States v. Fiore*, 443 F.2d 112 (2d Cir. 1971); *United States v. Torrez-Ortega,* 184 F.3d 1128 (10th Cir. 1999). We adopt the reasoning of the Supreme Court and our sister Circuit Courts of Appeals and conclude that the use of a witness's prior statement against a criminal defendant violates the defendant's Confrontation Clause

27

rights when the witness refuses to answer any substantive questions on cross-examination.[15]

"The Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct

---

[15] To be sure, *Douglas* and *Torrez-Ortega* are different from this case in that they involved witnesses who responded by asserting the privilege against self-incrimination. We think, however, that this distinction is immaterial for our purposes, as the Supreme Court has made it clear that an asserted privilege need not be properly invoked in order for a potential Confrontation Clause problem to arise. *See Douglas*, 380 U.S. at 420 ("We need not decide whether [the witness] properly invoked the privilege[.]"); *Torrez-Ortega*, 184 F.3d at 1133 ("Settled Supreme Court authority instructs that the validity of a witness's assertion of privilege does not determine whether such witness is subject to cross-examination." (citing *Douglas*, 380 U.S. at 420)).

If repeated meritless assertions of privilege can give rise to a Confrontation Clause violation, we think repeated responses of "no comment" can as well. In either case, the constitutional infirmity is the same: the witness's out-of-court statements are introduced despite it being "evident that he w[ill] refuse to give testimony of any sort." *Fiore*, 443 F.2d at 115; *see also Douglas*, 380 U.S. at 420 ("[I]nferences from [the] the witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination." (emphasis added) (quoting *Namet v. United States*, 373 U.S. 179, 187 (1963)); *Torrez-Ortega*, 184 F.3d at 1133 ("[S]ignificantly, [the witness's] limited responses were elicited well after he had established that he would not answer questions on the stand." (emphasis added)).

cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). The constitutionally-guaranteed right to cross-examination "is a functional right that promotes reliability in criminal trials," *Lee v. Illinois*, 476 U.S. 530, 540 (1986), and "reflects a judgment" that the reliability of a witness's testimony is best determined by testing in the "crucible of cross-examination," *Crawford v. Washington*, 541 U.S. 36, 61 (2004). A criminal defendant's right to cross-examine the witnesses against him applies not only to in-court testimony but also to out-of-court statements introduced at trial.[16] *Crawford*, 541 U.S. at 50-51. Therefore, "a witness whose prior statement is to be used must not only be produced but must also be sworn and made available for cross-examination." *United States ex rel. Thomas v. Cuyler*, 548 F.2d 460, 463 (3d Cir. 1977).

A criminal defendant's right to cross-examination is not satisfied simply because a witness appears and takes the stand at the defendant's trial. A criminal defendant is also entitled to a "*full and fair opportunity* to probe and expose the[] infirmities" of the witness's testimony. *Fensterer*, 474 U.S. at 22; *see also Owens*, 484 U.S. at 562 (a defendant must have an opportunity for "meaningful" cross-examination); *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (the Confrontation Clause guarantees an opportunity to conduct

---

[16] The right to cross-examination only applies to out-of-court statements that are "testimonial." *Crawford*, 541 U.S. at 51. Leonard's police statement and prior testimony are testimonial statements. *See Id.* at 68 ("Whatever else the term ['testimonial'] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.").

"effective" cross-examination). A full and fair opportunity to test the veracity of a witness's statement through cross-examination is particularly important when the witness is the defendant's accomplice or co-conspirator. The "truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." *Lee*, 476 U.S. at 541. This reflects a "reality of the criminal process, namely, that once partners in crime recognize that the 'jig is up,' they tend to lose any identity of interest and immediately become antagonists, rather than accomplices." *Id.* at 544-45.

We cannot conclude that Preston had a "full and fair opportunity to probe and expose" the infirmities of Leonard's statements through "meaningful" and "effective" cross-examination. *Owens*, 484 U.S. at 562; *Stincer*, 482 U.S. at 739; *Fensterer*, 474 U.S. at 22. Leonard, concerned that answering questions would jeopardize his own criminal appeal, responded "no comment" to nearly every question defense counsel asked him. *See Owens*, 484 U.S. at 561-62 ("Ordinarily a witness is regarded as 'subject to cross-examination' when he is placed on the stand, under oath, and responds willingly to questions. . . . [A]ssertions of privilege by the witness may undermine the process to such a degree that meaningful cross-examination . . . no longer exists."); *Cuyler*, 548 F.2d at 463 ("A witness who refuses to be sworn or to testify at all or one who, having been sworn, declines to testify on Fifth Amendment grounds, has not been . . . made available for cross-examination" (citing *Douglas*, 380 U.S. 415; *Fiore*, 443 F.2d 112) (internal citations omitted)). Without a full and fair opportunity to cross-examine Leonard, the admission of Leonard's prior statements violated

Preston's rights under the Confrontation Clause.[17] The lack of opportunity to effectively cross-examine a witness is particularly problematic where, as here, the witness was the defendant's accomplice. Leonard's statements, made after the "jig was up," were inherently suspect and should have been subject to the crucible of cross-examination.

---

[17] "[T]he Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Owens*, 484 U.S. at 559 (quoting *Stincer*, 482 U.S. at 739). For example, if a witness's belief is introduced into evidence, either through live testimony or admission of an out-of-court statement, and the witness then responds willingly to questions on cross-examination but is unable to recall the basis for the introduced belief, the defendant's right to cross-examination has not been violated. *See, e.g.*, *Owens*, 484 U.S. at 559; *Fensterer*, 474 U.S. at 20. The defendant in such a case has been given a full and fair opportunity to conduct effective cross-examination, even if the cross-examination ultimately isn't as effective as the defendant would like due to the witness's forgetfulness. This is because "other means of impugning" the witness's belief remain available: "the defendant has the opportunity to bring out such matters as the witness's bias, his lack of care and attentiveness, . . . and even (what is often a prime objective of cross-examination) the very fact that he has a bad memory." *Owens*, 484 U.S. at 559 (citation omitted). Such is not the case here, where the witness categorically refused to participate in cross-examination.

The Magistrate Judge reasoned, and Appellees argue, that Preston's right to cross-examine Leonard was not violated because "there were no legal or court-imposed restrictions on the scope or nature of Preston's questioning of Leonard." Br. for Appellees at 37. Restricting the scope or nature of cross-examination violates a defendant's rights under the Confrontation Clause. *See, e.g.*, *Delaware v. Van Arsdall*, 475 U.S. 673 (1986); *Davis v. Alaska*, 415 U.S. 308 (1974). However, this is not the only way in which a defendant's Confrontation Clause rights may be violated. "The cases that have arisen under the Confrontation Clause . . . fall into two broad, albeit not exclusive, categories: 'cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination.'" *Stincer*, 482 U.S. at 737 (quoting *Fensterer*, 474 U.S. at 18). Confrontation Clause claims like Preston's, which fall into the first category, are no less valid than those in the second category. *Id.*

It is of no consequence that Leonard answered "yes" to three of defense counsel's questions; those questions were not pertinent to the veracity of Leonard's prior statements, his testimony on direct-examination, or his credibility in general. We also reject the notion that Preston's Confrontation Clause right to cross-examination was satisfied because Leonard provided limited answers on direct-examination and because defense counsel was supposedly able to "exploit" those statements in his closing argument. Br. for Appellees at 40, 43. It is possible that, in some circumstances, a witness's answers on direct examination may provide the jury with enough information to reach a credibility determination and

therefore satisfy the Confrontation Clause.[18] However, neither direct examination nor a creative closing argument was a substitute for cross-examination in this case.

In short, the admission of Leonard's prior statements violated Preston's rights under the Confrontation Clause. Nonetheless, counsel failed to raise a Confrontation Clause objection at trial. Appellees have not provided any strategic explanation for trial counsel's failure to do so. Nor are we able to identify one. Thus, trial counsel's performance was ineffective under the first prong of *Strickland*.

### 2. Preston fails to satisfy *Strickland*'s prejudice prong.

Next, under *Strickland*'s prejudice prong, we ask if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The prejudice prong of the *Strickland* analysis is consistent with the general "harmless error" standard applicable to all federal habeas

---

[18] Consider, for example, a hypothetical witness who willingly answers the prosecution's questions on direct and, in doing so, reveals a number of biases against the defendant. Assume that the witness then refuses to answer defense counsel's substantive questions on cross-examination. The Confrontation Clause rights of the hypothetical defendant in such a case may not have been violated because, despite the witness's lack of cooperation on cross-examination, the defendant may have been able to "bring out such matters as the witness' bias, [and] his lack of care [or] attentiveness," which is "sufficient" under the Confrontation Clause. *Owens*, 484 U.S. at 559.

petitioners alleging non-structural errors. *See Johnson v. Lamas*, 850 F.3d 119, 132 (3d Cir. 2017) ("To be entitled to habeas relief, a habeas petitioner must establish that the trial error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" (alteration in original) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993))). Given the other evidence introduced at trial, we cannot conclude that there is a reasonable probability that the result of the proceeding would have been different if Leonard's prior statements had not been admitted. Stated in terms of the harmless error standard, we conclude that the admission of Leonard's statements did not have a substantial and injurious effect or influence in determining the jury's verdict.

First, the content of Leonard's statements was largely cumulative of other evidence. It was nearly identical to Butler's testimony, which also implicated Preston. Preston argues that without Leonard's corroborating testimony, the jury would have found Butler's testimony unreliable. This argument is not supported by the record. Butler's testimony was corroborated by the medical examiner's testimony as well as the physical evidence recovered from the scene. It also matched the statements Butler gave to police in the immediate aftermath of the shooting. Moreover, Preston himself largely corroborated Leonard's and Butler's version of events. Nor does Butler's testimony contradict that of Stanfield or Malloy, both of whom testified that they could not see who fired the shot.

Preston places much weight on Stanfield's and Malloy's testimony, suggesting that Butler did not turn the corner, and therefore did not see the shooting, until after the shot was fired. However, Preston fails to explain how Butler

34

could have manufactured a version of events that matched Leonard's and Preston's versions of events, the physical evidence, and the medical examiner's conclusions and provided that version of events to police immediately after the shooting if she had not seen the events herself. This argument also assumes that the jury considered Stanfield and Malloy credible witnesses. Yet their testimony was marred by several major inconsistencies. For example, Stanfield testified that Leonard drove his car down Dennie Street and parked on Wayne Avenue before engaging with Williams, while every other eyewitness testified that Leonard followed Williams down Dennie Street and onto Wayne Avenue on foot. Malloy testified that the three men were fighting on the sidewalk, while every other eyewitness and the bullet recovered from the scene indicated that the fight occurred on the street between cars. Malloy's suggestion that Williams shot himself was also contradicted by the medical examiner's conclusion.

Ultimately, neither Stanfield nor Malloy cast serious doubt on Butler's ability to witness the relevant events either. According to Butler, she was at the "corner of Dennie and Wayne" when she first saw Leonard and Preston fighting with Williams. JA523. Neither Stanfield nor Malloy called that into question, and they did not cast doubt on Butler's ability to see the fight from the corner. Instead, Stanfield said that he, personally did not see Butler until after the shot, when she came around the corner from Dennie Street. Similarly, Malloy merely said that he did not notice Butler until she came running around the corner. These answers do virtually nothing to impeach Butler's testimony.

Second, aside from their cumulativeness, Leonard's statements were not as damning as Preston suggests. Leonard

said he did not see Preston with a gun and could only "guess" that Preston was the shooter. JA601. The jury was also instructed to view Leonard's testimony with disfavor, since "an accomplice when caught will often try to place the blame on someone else [and] may even testify falsely in the hope of obtaining a favorable result." JA723.

Finally, even if, absent Leonard's testimony, the jury would have concluded that Leonard, and not Preston, was the shooter, there is not a reasonable probability that the jury would have reached a different verdict. The jury was properly instructed on accomplice liability and told that Preston could be found guilty of third degree murder if he was the accomplice of another person who caused the death of Williams with an intent to inflict serious bodily injury. Even if the jury had concluded that Leonard was the shooter, the evidence fully supported a finding that Preston was Leonard's accomplice and was therefore also guilty of third degree murder.

Because trial counsel's failure to object to the admission of Leonard's prior statements does not meet the second *Strickland* prong, Preston cannot use his IATC claim to overcome the procedural default of his underlying Confrontation Clause claim. Therefore, we are unable to grant him habeas relief.

## III. CONCLUSION

For the foregoing reasons, we affirm the District Court's order dismissing Preston's habeas petition.

36