NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-3123
_____

FRANK L. MARSH, JR.,
                                        Appellant

v.

ATTORNEY GENERAL NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3:19-cv-15440)
District Judge: Honorable Georgette Castner
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on November 5, 2024

Before: KRAUSE, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: March 28, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Frank Marsh appeals the District Court's order denying his petition for a writ of habeas corpus, claiming prosecutorial misconduct, ineffective assistance of counsel, and cumulative error. Because the District Court properly deferred to the state court's legal determination, we will affirm.

I.[1]

Marsh was sentenced to life in prison following his convictions in New Jersey state court for first-degree murder for hire, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon. Marsh was convicted for committing the murder at the behest of Raymond Troxell, who has been separately convicted. At trial, jurors heard from Kissel, a friend of Marsh and Troxell, who testified that he observed arrangements made for the murder for hire, that Marsh confessed to the murder, and that, while watching football with Marsh and Troxell, he saw Troxell walking over to Marsh with cash in hand. Jurors also heard testimony from a firearms expert that an American Derringer was one of the types of handguns that could have served as the murder weapon and that Marsh owned such a firearm, but it was missing and only an empty case for the

---

[1] We will set forth only those facts necessary to our analysis because we write principally for those familiar with the factual context and legal history of this case—the parties. We also emphasize a prosecutor's "chief business is not to achieve victory but to establish justice." *Brady v. Maryland*, 373 U.S. 83, 87 n.2 (1963) (citation omitted). The prosecutor acts as a "servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer." *United States v. Agurs*, 427 U.S. 97, 111 (1976) (citation omitted). "He may prosecute with earnestness and vigor . . . . But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). As we outline the facts, we remind the Middlesex County Prosecutor's Office that these high principles should be top-of-mind for any government attorney.

weapon was found in his home. Jurors were also presented with cell phone location data that seemingly contradicted Marsh's alibi for the murder.

Marsh owned several rifles and handguns. The trial judge issued an instruction that discussion of Marsh's gun ownership may be used only for the "very limited purpose" of demonstrating Marsh's familiarity with firearms and to link the missing Derringer to Marsh but not for demonstrating criminal propensity. RSA 863–65. Nevertheless, the prosecutor here frequently referenced Marsh's gun ownership long after the trial judge had determined that testimony was sufficient for this limited purpose and instructed the prosecutor to move on. The prosecutor also placed Marsh's weapons and corresponding ammunition in plain view and "paraded [them] in front of the jury" despite the judge's frequent instructions to "[p]ut the rifle down and move on." RSA 1007, 1051. The trial court noted that: "[I]t is the Court's perception that [the prosecutor] did absolutely, deliberately disregard my instructions and continue to go back to the area of firearms." RSA 1346.

The prosecutor also frequently referenced Marsh's familiarity using weapons while hunting and asked whether animals he hunted "require a lot of patience in order to kill." RSA 1007. The trial judge reprimanded counsel, noting "[h]unting has nothing to do with this trial" and instructed counsel to move on. RSA 1008. The prosecutor ignored this instruction and continued to reference Marsh's affinity for hunting and his lying in wait before shooting animals. On this issue, the trial court lamented that:

> With reference to the hunting. The Court does not see the use of somebody's hunting as an analogy to laying in wait for somebody. . . . To focus, as the State has, on the lying in wait and the number of weapons and

3

the type of weapons is nothing more in the Court's mind than a deliberate attempt to have the jury focus on a minor portion of the case as opposed to the evidence the State has. And it's being done deliberately.

RSA 1049–50.

In addition to sustaining various objections to the prosecutor's actions, the trial court issued a limiting instruction to the jury prior to the deliberation:

> You may not, may not use this evidence [of firearms] to conclude that [defendant] Marsh has a tendency to commit crimes or that just because he owns weapons, both long rifles and handguns, he must be guilty or, for that matter, is more likely to be guilty . . . . Similarly, the issue of hunting may not be used, may not be used to infer that he's more likely to commit this offense.

> The defendant's [Marsh's] hunting, the possession of weapons in Pennsylvania is and was a lawful activity. To the extent that he may have special skill or training specific to hunting, that may be considered by you.

RSA 1260. The jury convicted Marsh of first-degree murder for hire, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon.

Marsh appealed to the New Jersey Superior Court, Appellate Division, challenging the references to Marsh's gun ownership and arguing cumulative error. The conviction and sentence were affirmed. The New Jersey Supreme Court denied certification of the appeal without discussion. Marsh then filed for post-conviction relief, which the Superior Court denied. The New Jersey Superior Court, Appellate Division affirmed, and the New Jersey Supreme Court denied certification.

Petitioner filed a writ of habeas corpus in federal district court, which was denied. The District Court issued a certificate of appealability on Petitioner's claims of prosecutorial misconduct, ineffective assistance of counsel, and cumulative error. This

4

timely appeal followed.

## II.[2]

Where state courts address a claim on the merits, our review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241–2254.[3] AEDPA restricts a federal court's power to grant a writ of habeas corpus when a state court has already denied the same underlying claim on the merits, unless the state court's adjudication of that claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "'contrary to' clearly established federal law if it 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different' from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court's decision unreasonably applies clearly established federal law if "no 'fairminded juris[t]' could have reached the same judgment as the state court." *Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (quoting

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a).

[3] We exercise plenary review over the District Court's order denying a petition under AEDPA. *Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009).

5

*Harrington v. Richter*, 562 U.S. 86, 102 (2011)). And a federal court reviews a challenge under 28 U.S.C. § 2254(d)(1) based solely upon the record before the state court. *Id.* This "highly deferential standard" is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

## A.

Marsh claims prosecutorial misconduct based on the prosecutor's inquiry into Marsh's gun ownership, the prosecutor's statement that Marsh laid in wait to murder Russo as with hunting, and the prosecutor's parading of guns before the jury as noted above. A habeas petition is granted for prosecutorial misconduct when the "prosecutor's remark . . . so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Moore v. Morton*, 255 F.3d 95, 106 (3d Cir. 2001) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Misconduct violates due process when it constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." *Id.* at 105 (quoting *Donnelly*, 416 U.S. at 642). To make this determination, "the reviewing court [] weigh[s] the prosecutor's conduct, the effect of the curative instructions and the strength of the evidence." *Id.* at 107. The question is whether the strength of the evidence "reduced the likelihood that the jury's decision was influenced by the argument" such that the acts were not so prejudicial for "a curative instruction to [be unable to] mitigate their effect." *Id.* at 106–07 (citations omitted).

Here, the New Jersey appellate court reasoned the "limiting instruction was sufficient to overcome any prejudice the State may have created in repeatedly referencing

6

defendant's gun collection and marksmanship. . . . [T]he instruction reinforces the court's prior statement to the jury that '[h]unting has nothing to do with this trial.'" App. 71. We presume jurors follow limiting instructions. *See Samia v. United States*, 599 U.S. 635, 646 (2023). And the New Jersey appellate court recognized "there was sufficient independent evidence upon which the jury could have relied in fairly reaching its verdict. Between Kissel's testimony; the missing murder weapon; defendant's admission to owning an American Derringer like the weapon used to kill the victim; and the cell phone records, which undercut defendant's alibi; the jury had more than defendant's hunting practices upon which to base its decision." App. 69. The record demonstrates the trial court's extensive curative instructions and the "overwhelming" evidence supporting a "finding of guilt" mitigated any "likelihood that the jury's decision was influenced by" impermissible arguments. *Darden v. Wainwright*, 477 U.S. 168, 182 (1986).

Accordingly, the New Jersey appellate court's ruling that the State did not engage in prosecutorial misconduct so egregious as to deprive Marsh of a fair trial is not an unreasonable application of clearly established law. Thus, the prosecutorial misconduct claims fail.

B.

Marsh claims ineffective assistance of counsel based on his trial counsel's failure to object to the prosecutor's presentation of guns in the courtroom. To prove ineffective assistance of counsel, Petitioner must demonstrate: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice means there is "a reasonable

7

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 382 (3d Cir. 2018) (quoting *Strickland*, 466 U.S. at 694). Because evidence other than that of Petitioner's gun possession is sufficient to support the verdict and we presume a trial judge's instructions are followed, as discussed in detail above, it is unlikely the result of the proceeding would have been different had Marsh's counsel acted differently. *See Samia*, 599 U.S. at 646 (noting courts presume a limiting instruction is followed). Therefore, Marsh's ineffective assistance of counsel claim fails.

## C.

Marsh argues the cumulative effect of prosecutorial misconduct and counsel's ineffectiveness violated his right to a fair trial. Cumulative error exists when "errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Greenspan*, 923 F.3d 138, 154 (3d Cir. 2019) (citation omitted). "[A] habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'" *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Because of the jury charge, which we presume is followed, and the independent evidence supporting the conviction, discussed above, we defer to the New Jersey appellate court's reasonable determinations and hold the cumulative effect of the alleged errors was unlikely to be outcome determinative. *See Samia*, 599 U.S. at 646. Accordingly, Marsh's cumulative error claim fails.

## III.

8

We find the prosecutor's conduct here concerning. Nevertheless, under AEDPA's deferential standard, we defer to the state court's reasonable determinations even when this Court may have exercised its "independent judgment" differently. *Williams*, 529 U.S. at 411. For the foregoing reasons, we will affirm.